# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE

Assigned on Briefs November 28, 2001

## STATE OF TENNESSEE v. MICHAEL WAYNE BELCHER

**Direct Appeal from the Criminal Court for Carter County**
**No. S15009     Robert E. Cupp, Judge**

---

### No. E2001-00515-CCA-R3-CD    Filed April 22, 2002

---

The defendant appeals his convictions for aggravated burglary and possession of burglary tools. After a review of the record, we conclude that the defendant was not prejudiced by the State's failure to redact an obscure reference to the defendant's probation status from an audio taped statement that was played at trial.  However, we are unable to find sufficient evidence to establish that the defendant had a hammer and screwdriver in his automobile with the intent to commit burglary.  Therefore, the defendant's conviction for possession of burglary tools, a Class A misdemeanor, is reversed and dismissed.  The aggravated burglary conviction is affirmed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed in Part and Reversed in Part

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ALAN E. GLENN, JJ., joined.

H. Randy Fallin, Mountain City, Tennessee, for the appellant, Michael Wayne Belcher.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams III, Assistant Attorney General; Joe C. Crumley, Jr., District Attorney General; and Dennis D. Brooks, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant, Michael Wayne Belcher, was indicted for aggravated burglary and possession of burglary tools.  Following a jury trial, the defendant was convicted of both counts. The defendant was sentenced as a Range III persistent offender to fifteen years for the aggravated burglary conviction and eleven months and twenty-nine days for the possession of burglary tools conviction, to be served concurrently.  In addition, the defendant was ordered to pay a fine of $5000.00 for the aggravated burglary conviction and $2500.00 for the possession of burglary tools conviction.  Following the denial of his motion for new trial, the defendant filed a timely notice of appeal.  The defendant presents two issues for review in this appeal: 1.) whether

there was sufficient evidence to support the possession of burglary tools conviction, and 2.) whether he is entitled to a new trial based upon the State's failure to redact prejudicial information contained in the defendant's taped statement, which was admitted into evidence.

## FACTS

Joseph Owens testified that he and his wife, Faye Owens, operate a business, Faye's Ceramics. There is an area in the business that has a pullout bed, television, refrigerator, microwave, and clothing where the Owenses sleep ninety percent of the time. They do not have a residence outside of the business but do visit their daughter's nearby home to bathe because there is not a shower or bathtub in the business. There is a bathroom in the business, which has a sink and toilet.

On April 27, 2000, Mr. and Mrs. Owens returned home from a revival service at their church around ten o'clock p.m. They entered the business through the front door, and the telephone was ringing. Mrs. Owens answered the telephone. While she was on the telephone, Mr. Owens motioned to her that he was going to the workshop located in the back of the business. Upon entering the workshop, Mr. Owens noticed that a man, who he later identified to be the defendant, was standing near the back door, which was closed and locked. Mr. Owens repeatedly asked the defendant what he was doing but received no verbal response. Mr. Owens began shouting for his wife to call the police. According to his testimony, Mr. Owens observed the defendant for four or five minutes. All the lights were on, and the defendant was standing approximately fifty feet away from him. After instructing his wife to call the police, Mr. Owens pretended to reach for a weapon, and the defendant responded by starting to unlock the back door, which was secured by a bar across it and two deadbolt locks. After removing the bar and unlocking the locks, the defendant opened the door and ran down the alley behind the building toward a parking lot located at the end of the building. Mr. Owens followed the defendant to the parking lot and observed him get into the driver's side of a white car and drive away. Mr. Owens was able to observe the defendant as he ran down the alley, and the defendant did not appear to have any problems running. He also testified that the defendant did not have anything in his hands during the time that he observed him.

When the police arrived at Faye's Ceramics, Mr. Owens described the man he saw as approximately six feet tall and a little under two hundred pounds, wearing a green windbreaker, tan pants and round eyeglasses. A few minutes later, he was driven to a nearby location to identify the defendant, who had been stopped by police and fit the description Mr. Owens had given the police. The defendant was standing with several police officers on the side of the road. Mr. Owens immediately identified the defendant as the person he saw inside his residence. Mr. Owens testified that he did not get a "real good" look at the person's facial features and identified the defendant based on his height, build and eyeglasses.

Mr. Owens testified that the defendant entered his residence by crawling through an opening located above the back door. Because the business produced a great deal of white ceramic dust, the Owenses fashioned a vent with a fan to blow the dust out the opening. The opening was covered by a board on the outside, which could be opened to allow the air and dust

out. There was also a screen behind the board that covered the opening. On the inside of the building, the Owenses had used paneling to construct a tunnel from the opening to a fan. The tunnel was a few feet long. Mr. Owens testified that the board and screen covering the opening had been pried open. There was also a hole in the paneling where someone appeared to have jumped down from the tunnel to the floor below. Nothing was taken from the business during the break-in and the only damage was to the opening and tunnel.

Officer Jason Shaw testified that he was on patrol in the area near Faye's Ceramics on the night of the break-in. Shortly after ten o'clock p.m., Officer Shaw noticed a white car pull out of a parking lot a few blocks up from the direction he was driving his police car. The car's taillights were not on, and it pulled onto the street at a high rate of speed. Officer Shaw responded by accelerating to catch up with the car. As he was accelerating, the dispatcher radioed that there was a break-in in progress at Faye's Ceramics. Officer Shaw immediately radioed and informed the dispatcher that he was following a potential suspect. Officer Shaw then proceeded to pull the car over and order the driver to exit the car. The driver of the car was the defendant. He was wearing a grey jacket and light tan pants, which were covered with a light colored dust. He also had on round eyeglasses.

While the defendant was being detained by Officer Shaw on the side of the road, another officer drove by with Mr. Owens. As the officer drove by, he shone a spotlight on the defendant to prevent him from seeing Mr. Owens inside the police car. Mr. Owen identified the defendant as the man who broke into his residence. Thereafter, the defendant was placed under arrest. A search of his car revealed a hammer and screwdriver under the driver's seat and a pair of brown work gloves beside the seat. The gloves were also covered with a light colored dust.

The defendant gave an audio taped statement at the police station after his arrest. He denied breaking into the victims' home. He told police officers that he had been playing golf earlier that day. He also claimed that he had car trouble and had worked on his car prior to being stopped by Officer Shaw.

Officer John Ramsey testified that he responded to a call reporting a break-in at Faye's Ceramics. Upon arrival, he found signs of forced entry through the transom over the back door. The entrance to the back door was located in the alley behind the building. Officer Ramsey introduced photographs of the back door, which depicted the opening that had been forced open above the door. Covering the opening was a board that appeared to have been pried open. Officer Ramsey opined that the defendant climbed through the hole above the door and dropped down into the building on the other side. Another photograph depicted a concrete pillar approximately three and a half feet high that was located to the right of the back door. Officer Ramsey indicated that the defendant could have stood with one foot atop the pillar and hoisted himself up and into the opening. Officer Ramsey testified that he did not observe anything on the floor near the entryway inside the building. He also indicated that the board over the opening was not taken off completely but just pulled loose at the bottom of the opening so that a person could crawl under it. He could not tell what was used to pry the board loose and indicated that someone could have used their hands to do it. Officer Ramsey testified that he observed a light colored dust in the opening above the back door as well as throughout the

-3-

workshop area of the business. The dust was similar to the dust found on the defendant's clothing.

After inspecting the Owens residence, Officer Ramsey drove Mr. Owens by the location where the defendant was being detained by Officer Shaw. The defendant was standing outside his car with several police officers. Officer Ramsey illuminated the defendant with his spotlight as they drove by, and Mr. Owens immediately identified the defendant as the man he saw inside his residence. Officer Ramsey also noticed that the defendant was covered with a light colored dust.

The defendant's mother and an officer at the jail where the defendant was housed after his arrest testified for the defense. Officer Pemberton testified that a few weeks after the defendant's arrest, he transported the defendant to a doctor on at least two occasions. Officer Pemberton accompanied him into the examination room where he observed an open sore on the defendant's leg and abrasions on his feet. Officer Pemberton also observed that the defendant walked with a limp and favored one leg as a result of his injuries.

The defendant's mother, Ruth Belcher, testified that the defendant was in a serious car accident exactly a month before his arrest. As a result of his injuries, his ability to walk was impaired during the time that he was arrested. Ms. Belcher also testified that the car the defendant was driving when he was arrested had peeling paint. She attempted to cover the peeling paint by spraying white spray paint on the car. The spray paint was not car paint, however, and would rub off if touched leaving a white dust on anything that came in contact with it. She verified the car also had some mechanical problems. Finally, Ms. Belcher indicated that she and defense counsel had taken measurements of the opening above the back door at Faye's Ceramics. It was seven feet from the ground to the bottom of the opening. The opening, which was shaped like the letter "T," was fifteen inches tall, thirty-four inches wide at the top, and twenty-seven inches wide at the bottom.

## ANALYSIS

The defendant challenges the sufficiency of the evidence to support his conviction for possession of burglary tools, a Class A misdemeanor. In addition, the defendant alleges that he was unfairly prejudiced by the admission of a taped statement containing a reference to his parole status at the time the instant offense was committed and is, therefore, entitled to a new trial.

### Sufficiency of Evidence

The defendant asserts that there was no evidence to establish that he possessed tools with the intent to use them or allow them to be used to commit a burglary, which is an element of possession of burglary tools. We agree. When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 61 L. Ed. 2d 560,

99 S. Ct. 2781 (1979). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this Court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Nor may this Court reweigh or reevaluate the evidence. Cabbage, 571 S.W.2d at 835. A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. Grace, 493 S.W.2d at 476.

The indictment in the instant case alleges that the defendant committed "the offense of possession of burglary tools by knowingly possessing a screwdriver and a hammer with the intent to use it or allow it to be used to commit burglary . . . ." Tennessee Code Annotated section 39-14-701 provides that "[a] person who possesses any tool, machine or implement with intent to use the same, or allow the same to be used, to commit any burglary, commits a Class A misdemeanor." The evidence viewed in the light most favorable to the State established that the defendant forcibly entered the victims' residence/business by crawling through an opening directly over the back door. The opening was seven feet from the ground and covered by a board. The proof established that the defendant would have had to stand with one foot on top of a three and one half foot concrete post located about two feet to the right of the opening and pry the board open. There was a screen behind the board, which was also torn open. Thereafter, the defendant would have had to hoist himself up and into the opening and then drop down into the building. In addition, the evidence established that the defendant was apprehended in his car a few miles from the victim's business/residence. An inventory search of the car revealed that there was a hammer, a screwdriver, and a pair of gloves beside the seat.

The State asserts that the aforementioned evidence was sufficient to support the defendant's conviction for possession of burglary tools. Specifically, the State maintains that the jury could clearly infer from such facts that the defendant "wore the gloves and used the hammer and screwdriver to pry open the boarded vent, tear through the wire screen and enter the [victims'] habitation." We disagree. We first note that the gloves may not be used to establish the crime because they were not alleged in the indictment; therefore, the defendant was not provided his constitutional right to notice that he would be required to defend the charge based upon his possession of the gloves. Thus, the defendant's conviction must be supported by evidence that the screwdriver and/or hammer were burglary tools.

We acknowledge that the jury could have reasonably inferred that the defendant "used the hammer and screwdriver to pry open the boarded vent, tear through the wire screen and enter the [victims'] habitation" based upon the evidence cited by the State. However, the record contains other evidence not cited by the State that established that the defendant did not use the hammer or the screwdriver to gain entry to the victim's home. To begin with, the tools were

recovered from the defendant's car, not his person. The evidence established that the defendant's car was parked in a parking lot around the corner of the building during the burglary and that he had to run down an alley past two other businesses in order to get to his car.

The victim testified that he observed the defendant in a well-lighted room for four to five minutes and described what he was wearing and his approximate height and weight. In addition, the victim testified that the defendant did not have anything in his hands during this time. According to the victim, the defendant escaped from the building through the back door. In order to open the door, the defendant had to first remove a pipe fashioned across the door's opening and then unlock two deadbolts. After he exited, the victim followed the defendant as he ran down the alley around the corner to his car and watched as he drove away. The defendant did not stop and pick up anything from the ground on his way to the car.

The investigating police officer, Officer Ramsey, testified that he could not tell by examining the board and screen what was used to pry them open. He further testified that it was possible that the intruder ripped them open with his hands. Finally, there was no other evidence presented to suggest that the tools were used to pry open the board and rip the screen.

We conclude that there is insufficient evidence to establish that the defendant possessed the screwdriver and hammer with intent to use them to commit burglary. Based upon all the evidence contained in the record, viewed in the light most favorable to the State, the defendant did not use the screwdriver or hammer to forcibly enter the victims' home. To the contrary, the evidence indicates that the tools were in the defendant's car during the burglary. Furthermore, a screwdriver and hammer are innocent tools in and of themselves. Therefore, possession of them by a burglar without more is not sufficient to establish that they are burglary tools. See State v. Cox, 644 S.W.2d 692 (Tenn. Crim. App. 1982) (finding evidence sufficient where defendant's accomplice had two screwdrivers and a pair of pliers in his pocket and a tire iron was found on ground near the defendant); State v. Rice, 973 S.W.2d 639 (Tenn. Crim. App. 1997) (finding sufficient evidence where defendant had a pair of pliers, a screwdriver and a flashlight on his person and admitted that he had the tools with him so that he could steal a headlight); State v. Morgan, 929 S.W.2d 380 (Tenn. Crim. App. 1996) (finding sufficient evidence where three flashlights, three pairs of wire cutters, two pairs of pliers, one screwdriver, three tire tools and various other tools were found in defendant's car and evidence introduced that paint on one of opaque tire tools matched paint from door that was forcibly opened during a recent burglary). Because there is no evidence from which a jury could reasonably find that the defendant used the tools to commit the burglary of the victims' home nor other evidence that the defendant had the otherwise innocuous tools in his car with the intent to commit burglary, the defendant's conviction for possession of burglary tools must be reversed and dismissed.

Erroneous Admission of Prejudicial Information

The defendant alleges that he was unfairly prejudiced by the admission of a taped statement that contained information about his parole status. At the time of his arrest, the defendant was on probation/parole for an offense he committed in Florida. He told investigators about his probation status during the taped interview conducted after his arrest. The audiotape of

this interview was admitted as evidence at trial, played to the jury, and made available to the jury during their deliberations. According to the record, the State and the defendant believed that all references to the defendant's prior criminal history had been redacted from the tape before it was played to the jury. However, the question "Does your probation officer know you're up here?" remained on the audio taped statement. The defendant requested a mistrial after the tape was played, which was denied by the trial court.

According to the record, the quality of the tape was poor. As a result, it was very difficult to discern what was being said. Although the defense attorney heard the challenged statement, neither the trial judge nor the prosecutor heard the statement. In denying the defendant's motion for a mistrial, the trial judge found that the jury did not hear the statement, pointing out that he did not hear it and he was positioned closer to the tape than the jury. Assuming that the jury did not hear the challenged statement, the trial court found that it would be better to "leave it alone" rather than instruct the jury on it. The trial court instructed the State to redact the challenged portion of the tape before it was submitted to the jury for deliberation. The trial court further assumed that if any of the jurors heard the statement when it was played at trial, he or she would know why it had been removed and disregard the statement during their deliberation of the defendant's guilt.

Both parties agree that information about the defendant's probation or parole status in Florida was erroneously admitted. However, violation of an evidentiary rule does not necessarily mandate reversal of the case but is subject to harmless error analysis. State v. Martin, 964 S.W.2d 564, 568 (Tenn. 1998). Therefore, such error does not require reversal unless it "affirmatively appear(s) to have affected the result of the trial on the merits." Tenn. R. Crim. P. 52(a). Based upon our review of the record, we conclude that the prejudicial effect of the evidence that the defendant was on probation in Florida was slight. First, it is highly unlikely that any of jurors heard the statement. Neither the trial judge nor the prosecutor heard the statement when the tape was played at the trial. It was only after the tape was played in chambers that the trial judge and prosecutor were able to discern the obscure reference to the defendant's probation status on the tape. Furthermore, the statement was redacted prior to being submitted to the jury for deliberation. We, therefore, conclude that the reference to the defendant's probation status was not prejudicial considering the circumstances surrounding its admission and the overwhelming evidence of the defendant's guilt. This issue is without merit.

## CONCLUSION

For the foregoing reasons, the defendant's conviction for possession of burglary tools is reversed and dismissed. The aggravated burglary conviction is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE