# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Opinion on Remand

## STATE OF TENNESSEE v. DORIS NELL JONES

**Appeal from the Circuit Court for Lawrence County**
**No. 23258    Robert L. Jones, Judge**

---

**No. M2009-01102-CCA-RM-CD  - Filed August 26, 2009**

---

On June 1, 2009, the Tennessee Supreme Court remanded this case for reconsideration in light of its opinion in State v. Byington, 284 S.W.3d 220 (Tenn. 2009).  This court initially dismissed the defendant's appeal for lack of jurisdiction after both the defendant's motion for new trial and the trial court's order denying the motion were absent from the record.  This court also denied the defendant's subsequent petition to rehear and motion to supplement the record with the missing documents.  On remand, the defendant, who was convicted of second degree murder and sentenced to eighteen years in the Department of Correction, again argues that the trial court erred by allowing certain out of court statements into evidence and that the State engaged in prosecutorial misconduct based on certain statements made during closing argument.  After reviewing the record, we conclude that the trial court erred in admitting testimony by the defendant's mother regarding a telephone conversation between the defendant and the victim, but that such error was harmless.  We also conclude that the defendant's contentions regarding the other challenged statements and the State's closing argument are waived for the defendant's failure to include them in the motion for new trial and that the issues do not merit plain error review.  We therefore affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ALAN E. GLENN, JJ., joined.

Claudia S. Jack, District Public Defender; and Shipp R. Weems and Sharon D. Aizer (on appeal only), Assistant District Public Defenders, for the appellant, Doris Nell Jones.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; T. Michel Bottoms, District Attorney General; and James G. White, II, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The record reflects that in November 2001, a Lawrence County grand jury indicted the defendant on one count of premeditated first degree murder. Following an April 2003 jury trial, the defendant was convicted of the lesser included offense of second degree murder and sentenced to a term of eighteen years in the Department of Correction. The judgment of conviction in this case was entered on June 3, 2003.

The defendant filed a notice of appeal on April 9, 2007, and the case was assigned to this court on briefs on December 18, 2007. The record on appeal contained neither a motion for new trial nor an order denying the motion for new trial. On February 27, 2008, this court dismissed the appeal. In the opinion, we stated that because an order denying the defendant's motion for new trial was absent from the record, and because the notice of appeal was filed some forty-five months after the judgment of conviction would have become final absent a motion for new trial, we had no jurisdiction to consider the appeal. We also stated that because the issues the defendant raised on appeal could have been preserved only by their being raised in a motion for new trial, the absence of the motion for new trial from the record meant that the defendant had preserved no issues on appeal. See State v. Doris Nell Jones, No. M2007-00791-CCA-R3-CD (Tenn. Crim. App. Feb. 27, 2008).

The defendant subsequently filed a timely petition to rehear and motion to supplement the record. Attached to the defendant's filings were copies of the defendant's motion for new trial, filed June 20, 2003, and the trial court's order denying the motion for new trial, filed March 13, 2007. While the documents purported to show that the defendant's motion for new trial and notice of appeal were both timely filed, this court denied the defendant's motions, stating:

> [I]t is incumbent on each appellant to review the record to ensure that all necessary documents are contained in the record on appeal. This is especially true of the motion for new trial and order denying the motion; absent an order denying the motion for new trial, this court does not have jurisdiction to consider the appeal. In this case . . . the appellant knew, or at the very least should have known, that the order denying the motion for new trial was absent from the appellate record, and that this omission would have prevented this court from considering her appeal. However, as stated in our original opinion, the appellant did not address this omission in her reply brief or in any other filing with this court.

The defendant subsequently filed a timely application for permission to appeal to the Tennessee Supreme Court. On June 1, 2009, the supreme court remanded the defendant's case to this court for reconsideration in light of the supreme court's opinion in Byington. In that case, this court dismissed a defendant's delayed direct appeal for lack of jurisdiction. 284 S.W.3d at 222. The record in that case contained a minute entry reflecting that the trial court denied the defendant's motion for new trial, but we concluded that absent the trial court's written order denying the motion,

we had no jurisdiction to consider the case.  Id.  The supreme court, in addition to concluding that a minute entry was sufficient to grant jurisdiction, held that this court, instead of dismissing the appeal, "should have ordered supplementation of the record pursuant to Rule 24 of the Tennessee Rules of Appellate Procedure or Tennessee Code Annotated section 27-3-128, to include an order disposing of the defendant's motion for new trial."  Id. at 224.  The court further opined that "'[t]he procedure for correcting or modifying the record reflects the dual goals of avoiding technicality and expediting a just resolution of the case on its merits.'"  Id. at 223 (citing State v. Housler, 167 S.W.3d 294, 296 (Tenn. 2005)).

While this case can be distinguished somewhat from Byington in that the record on appeal here contained neither the defendant's motion for new trial nor any indication (in the form of either a minute entry or a written order) that the trial court denied the motion, the interests of justice inherent in the Byington opinion can certainly be applied to the instant case.  Accordingly, we will now consider the defendant's appeal on the merits.

Factual Summary

Although on appeal the defendant is not challenging the sufficiency of the convicting evidence, we provide a summary of the relevant facts to establish context.  On the morning of October 24, 2000, the defendant's brother, Eddie Staggs, visited their mother, Ruby Fink, at her Lawrence County residence.  Staggs told Fink that he had gotten into a fight with another man in Cleveland, in Bradley County, and that he had hurt the other person badly.  Fink told her son to return to Cleveland to talk to the police, but he did not do so.  That afternoon, Staggs, his mother, the defendant, and other family and friends gathered at Mike and Teresa Clayton's house.  At that time, the people gathered at the Clayton residence were all crying because Staggs was threatening suicide.  Fink wanted her son to speak with her pastor, so the group went to the pastor's house. While the group was at the pastor's house, Staggs' girlfriend, Michelle Blair, called the hospital where the person Staggs had purportedly injured in the fight was being treated.  Blair testified that she was told that the other person was "probably going to die."[1]  Blair relayed this information to Staggs, who promptly exited the pastor's house and fatally shot himself.

That night, several of the defendant's family and friends gathered at Fink's residence. Eventually, the defendant's live-in boyfriend, Danny Shults, arrived at the house and was physically confronted by several people.  At trial, witnesses offered differing testimony regarding the circumstances surrounding Shults' arrival and his confrontation with the gathered mourners. Shirley Lop, testifying for the State, said that Shults did not say anything upon entering the house and did not begin the altercation; rather, she said that someone in the house said that Shults was "the reason" Eddie Staggs killed himself and that six to eight people pushed Shults outside the house without asking him to leave.  She also said that Shults did not appear to be drunk or angry upon entering the house.  Lester Dewayne Lop, also testifying for the State, said that Shults commented on how "everyone" was accusing him of something before the gathered mourners pushed him outside the

_____

[1] Blair testified that the other person involved in the fight ultimately survived.

house without asking him to leave. Several other witnesses, including State's witness Michelle Blair and practically all of the defendant's witnesses, including her mother, Ruby Fink, testified that Shults was drunk when he entered the house. Several of these witnesses testified that Fink and others told Shults to leave before the physical confrontation began, and that Shults initiated the altercation when he "swung" at Fink. These witnesses also testified that Shults spoke badly of Eddie Staggs, with some witnesses testifying that Shults said that Staggs "deserved" to die and others saying that Shults called Staggs a "sorry son of a bitch."

During the confrontation between Shults and the others inside Fink's house, the defendant was seen waving a gun in the air. Some of the gathered mourners led the defendant into a bedroom away from the melee, but after Shults was forced outside the house, the defendant left the house. The testifying witnesses said that the defendant then fired between one and seven shots into the air. Shults, who was in a nearby parking lot walking toward his car, had his back turned to Fink's house when the defendant fired into the air, but he turned around once he heard the shots. Patricia Kephart, testifying for the State, said that once Shults turned around, the defendant said, "I'm going to shoot you, Danny." The victim placed his hands in the air and said, "[G]o ahead and shoot me." Other witnesses described a similar confrontation. The defendant then fired between one and four shots at Shults, with one bullet hitting him in the stomach. Charles Harlan, who at the time of trial was a licensed physician, performed the victim's autopsy. Harlan testified that the bullet severed an artery, causing the victim to bleed to death.[2]

ANALYSIS

Admissibility of Hearsay Testimony Regarding Victim's Statements to Defendant

The defendant first argues that she was prejudiced by the trial court's admission, over her objection, of portions of testimony by her mother, Ruby Fink, regarding a telephone conversation between the defendant and the victim. The record reflects that during its cross-examination of Fink, the State asked Fink about a conversation she had with the defendant while they and other members of their family were at Mike and Teresa Clayton's house. The defendant objected on hearsay grounds, and the trial court held a jury-out hearing regarding the proposed testimony.

During the hearing, Fink testified that when she arrived at the Clayton residence, the defendant and Teresa Clayton both told her that the victim "had called several times" and that he had said that the defendant "had better get her 'GDA double S home.' That he was supposed to come for her brother[.]'" According to Fink, the defendant told the victim that "she wasn't leaving her brother at that point." The court commented, "[I]t's not hearsay . . . if the statement is not . . . being introduced for the purpose of proving the truth of the matter asserted. But, if it's just to prove that the statement was said then it's not hearsay." The defendant then objected on relevance grounds, saying, "It's not relevant to any issues at this trial that Danny [Shults] called several times and [said

[2]Harlan also testified that the victim's blood alcohol content at the time of his death was 0.17% and that the victim's blood tested positive for THC, the active chemical compound in marijuana.

that he] wanted [the defendant] to come home." The State replied that the testimony was relevant to establish motive—particularly, that the defendant was aware that the victim had reported Eddie Staggs to the police. In continued jury-out testimony, the State specifically asked Fink whether the defendant told her that the victim "was going to call the police and report Eddie," to which Fink replied, "I think she said that - - he told her if she didn't come home or something that he was going to call the police and tell where Eddie was at or something . . . ."

At the conclusion of the jury-out hearing, the trial court ruled that the State could question Fink about the telephone conversation between the victim and the defendant, stating that "this [testimony] is just as relevant as all the other things that Mrs. Fink has been testifying to on direct examination." The court also found that the testimony was "not hearsay . . . . It's not being introduced for the purposes of showing the truth of what [the defendant] may have said or Danny [Shults] may have said, but just whether or not those people said those things to show their state of mind or whatever at that time."

When the jury returned to the courtroom, Fink testified as follows regarding the defendant's telephone conversation with the victim:

> Q [by the State]: Let me ask you, specifically, did Doris tell you that Danny Shults had called and threatened to turn you in?
>
> A [by Ruby Fink]: She told me that Danny had called. I can't remember her saying that [he] turned him in for what
>
>     . . . .
>
> Q: Did you state previously, under oath, that Doris told you that Danny Shults had called her out there, when you got back from the doctor, out there at the [Clayton] house, told - - wanted her to come home and if she didn't come home that he was going to call the law on Eddie?
>
> A: She said Danny had called. I don't remember if she said he was going to call the law on Eddie but . . . I knew he would be down there - - I wasn't worried about him calling the law on Eddie because we didn't care about that.

The defendant argues that the testimony was inadmissible hearsay that was introduced solely to establish the truth of the matter asserted. In her brief, the defendant argues, "Since the State charged [the defendant] with First Degree (Premeditated) Murder, motive (or intent) was a critical element of proof—and one the State could not have proven without these out of court statements." The State counters that the trial court properly found that the testimony was not hearsay in that it was "not offered to prove the truth of the matter asserted, whether the victim had or was actually going to notify the police of Eddie Staggs' location, but [was] offered to show the defendant's state of mind at the time." After reviewing the record, we conclude that the challenged testimony was

inadmissible hearsay and should have been excluded by the trial court.

The Tennessee Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). Hearsay is not admissible unless an exception to the hearsay rule applies. Tenn. R. Evid. 802. Where the proposed testimony involves "hearsay within hearsay," such as in the instant case, a recognized hearsay exception must apply to each "level" of the statement for the testimony to be admissible. See Tenn. R. Evid. 805.

In examining the first "level" of Fink's testimony, the victim's statements to the defendant, any testimony suggesting that the victim told the defendant that he intended to "call the law" on Eddie Staggs was clearly hearsay. While the trial court found that the statement was not offered for the truth of the matter, we agree with the defendant's assertion that the truth of the matter asserted in the statement was relevant. As the defendant states in her brief, "if [the defendant] did not believe that Mr. Shults would call the police on her brother, then Shults' statement would have no impact on [the defendant] and would not provide a motive for the shooting." This assertion is supported in the State's brief; in its brief, the State argues that "[i]t was the State's theory at trial that Eddie Staggs had killed himself because he believed the man he had stabbed was going to die and that the victim had called police. Therefore, the defendant and her family blamed the victim for Mr. Staggs' death." Furthermore, the hearsay testimony was not admissible under the "state of mind" hearsay exception embodied in Tennessee Rule of Evidence 803(3). That rule provides that "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health)" is admissible, but in this case the victim's state of mind was not at issue in this case—the defendant's state of mind was implicated here, and the Advisory Commission Comments to Rule 803(3) state that "only the declarant's conduct, not some third party's conduct, is provable by this hearsay exception." Accordingly, we conclude that the trial court erred in admitting Fink's testimony regarding the victim's threats to "call the law" on Eddie Staggs.

However, we conclude that the error was harmless beyond a reasonable doubt. "[A]n evidentiary ruling ordinarily does not rise to the level of a constitutional violation." State v. Powers, 101 S.W.3d 383, 397 (Tenn. 2003) (citing Crane v. Kentucky, 476 U.S. 683, 689 (1986)). "When an error is not of a constitutional variety, Tennessee law places the burden on the defendant who is seeking to invalidate his or her conviction to demonstrate that the error 'more probably than not affected the judgment or would result in prejudice to the judicial process.'" State v. Rodriguez, 254 S.W.3d 361, 371-72 (Tenn. 2008) (quoting Tenn. R. App. P. 36(b); other citations omitted). The defendant cannot meet that burden in this case. The defendant was charged with premeditated first degree murder. The challenged testimony was the strongest evidence supporting the State's theory under which it sought to establish premeditation. Had the jury convicted the defendant of first degree murder, the trial court's error may well have been deemed prejudicial. However, the jury returned a not guilty verdict on the first degree murder charge and instead convicted the defendant of second degree murder, defined by our criminal code as a "knowing" killing. Tenn. Code Ann. § 39-13-210(a)(1). The evidence regarding the physical altercation between the victim and the

defendant's family and the verbal altercation between the defendant and the victim before the defendant shot the victim overwhelmingly established the requisite mental state in this case. The defendant is therefore not entitled to relief on this issue.

Admissibility of Other Testimony Regarding Victim

The defendant also argues that the trial court erred in admitting the testimony of three other witnesses who testified regarding the victim's possibly reporting Eddie Staggs to law enforcement. The defendant did not address any of these witnesses' testimony in her motion for new trial, so on appeal she will only be granted relief if she can establish plain error. "When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of an accused at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." Tenn. R. App. P. 36(b). Plain error review is appropriate only when the defendant can establish the following factors:

> (a) the record . . . clearly establish[es] what occurred in the trial court;
> (b) a clear and unequivocal rule of law [has] been breached;
> (c) a substantial right of the accused [has] been adversely affected;
> (d) the accused did not waive the issue for tactical reasons; and
> (e) consideration of the error is "necessary to do substantial justice."

State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)); see also State v. Gomez, 239 S.W.3d 733, 737 (Tenn. 2007). The appellate court need not consider all five factors if any single factor indicates that relief is not warranted. Smith, 24 S.W.3d at 283.

The first statement occurred during the cross-examination of defense witness Rose Murphy. The State asked Murphy if "there was any discussion about Danny Shults at the hospital" or if "[a]nybody blam[ed] Danny Shults" for Eddie Staggs' suicide. The witness answered "no" both times. Given that the defendant did not object to the State's line of questioning, review of the comment is "not necessary to do substantial justice." Furthermore, because Murphy's testimony refuted the State's theory that the defendant killed the victim because the defendant blamed the victim for Eddie Staggs's death, Murphy's testimony did not affect a substantial right of the defendant. Accordingly, the defendant is not entitled to plain error review of this statement.

The second statement occurred during the cross-examination of defense witness Teresa Staggs, who acknowledged that while she was at Ruby Fink's house the night the defendant shot the victim, she heard "discussions . . . about Danny turning Eddie [over to] the law[.]" When asked if anyone was upset at Shults for what he had supposedly done, Teresa Staggs answered, "No, I wasn't and I don't think anyone else was." She specifically denied that the defendant and Fink were upset with Shults, and she said that the defendant's grieving over her brother was "the only thing that was on [the defendant's] mind." The defendant did not object to this line of questioning. As stated above, the defendant's failure to object leads us to conclude that our review of this comment is not

necessary to do substantial justice, and as this comment refuted the State's theory regarding the defendant's supposed motive for the shooting, the testimony did not affect a substantial right of the defendant. Accordingly, the defendant is not entitled to plain error review of this statement.

The third challenged statement occurred during the cross-examination of defense witness Sherry Lynn Joyner. The State asked the witness, "Was it discussed over at the house that night, at Ruby's house, about Danny calling the law about Eddie or where Eddie was?" The witness replied, "Yes, sir." The State then asked, "So when Danny first got to the residence, everybody there wanted him to leave; is that right?" Defense counsel objected, noting, "I think the Court had given instructions that went beyond whether that was there or whether . . . ." After the trial court told defense counsel that he could "redirect on that," the State asked the witness if "people were upset that [the victim]" was there, to which the witness replied, "Yes, sir."

Although the defendant argues that Joyner "testified over defense objection" regarding the "discussion at Ms. Fink's home . . . about Mr. Shults advising law enforcement of Staggs' whereabouts," the record is unclear whether the defendant was objecting to that part of Joyner's testimony or the State's question regarding whether "everyone" gathered at Fink's home wanted the victim to leave once he arrived. Regardless, review of Joyner's testimony is not necessary to do substantial justice in this case. Joyner did not testify whether the defendant was involved in any discussion regarding any telephone call the victim might have placed to police, and given the testimony of the other witnesses who said that nobody, presumably including the defendant, blamed the victim for Eddie Staggs' death, the prejudicial impact of Joyner's suggestion that the victim might have called the police concerning Staggs' whereabouts was minimal at best. Accordingly, the defendant is not entitled to plain error review of this statement.

### Rebuttal Testimony Regarding Purported Statement by Ruby Fink

The defendant next argues that the trial court erred by allowing the State to offer rebuttal testimony of Patricia Kephart, whose testimony the State presented to impeach the testimony of the defendant's mother, Ruby Fink. The defendant argues that Kephart's testimony—in which she recounted Fink standing over the dying victim and stating that she hoped "the son of a bitch" died so that the victim's family would know how she felt—was highly prejudicial and should have been excluded, while the State argues that the trial court properly admitted the testimony for impeachment purposes.

The defendant did not raise this issue in her motion for new trial, so on appeal she is limited to plain error review. See Tenn. R. App. P. 36(b). The record does accurately reflect what occurred in the trial court regarding this issue. During its cross-examination of Fink, the State asked the witness, "Did you, after Danny was shot, go out into the yard and say, 'I hope you die you son of a bitch, so your mother will know how I feel'?" Fink replied, "No sir, I did not, because I wouldn't wish that on [any]body. I don't want [any]body's son dead." During her cross-examination, defense witness Teresa Staggs also denied that Fink made this statement. The defendant did not object to either witness's testimony or to the questions asked.

-8-

In a jury-out hearing held at the conclusion of the defendant's proof, the State announced its intent to recall Kephart as a rebuttal witness; the State said that Kephart would testify that Fink did make the statement she denied making. The State argued that the testimony was relevant to impeach Fink's credibility but also noted that Kephart's testimony "goes to motive" and also "goes to [the defendant's] state of mind." The State added that the reason the defendant's family reacted as they did when Shults entered Fink's house was "they thought he was responsible for Eddie's death, and that's the reason she went out and made that statement. And she denied making that statement, and she has given testimony into other things." The defendant argued that the proposed testimony was "an immaterial statement made by Ruby Fink" that "would never go to the motive of Doris Jones." The trial court ruled that the testimony was admissible for impeachment purposes pursuant to Rules 613 and 616 of the Tennessee Rules of Evidence.

Once the jury returned to the courtroom, Kephart testified that after the victim was shot, she and her son went to the victim; Kephart's son knelt down beside the victim while Kephart stood "just to the left" of her son. Kephart testified that at that point, Fink "c[a]me out screaming and there [were] two ladies [who] grabbed her by both arms. And she looked down at Danny and she told Danny, she said, 'You S.O.B. I hope you die and your mother has to suffer just like I have,' and that was all I heard." The defendant then recalled Sherry Joyner, Teresa Staggs, and Ruby Fink, all of whom denied that Fink made the above-referenced statement.

The defendant rested her case after Fink's testimony. With the jury still present in the courtroom, the defendant moved for "limiting instructions to the jury on the rebuttal of the State that it can only be used for one minor purpose." The trial court then gave the following limiting instruction before closing arguments:

> Ladies and gentlemen, if a witness says something out-of-court that you believe to be inconsistent with what the witness said in court, you may consider that out-of-court statement only for the purpose of testing the credibility of the witness's testimony in court.
>
> You may not consider any out-of-court statement as substantive proof of the truth of the matter allegedly asserted in that out-of-court statement.
>
> In other words, any such out-of-court statement comes in just for the purpose of testing the credibility of the witness or to possibly show biased [sic] for or biased [sic] against a party but not for the purpose of proving the truth of the matter asserted.

After the parties' closing argument, the trial court gave the following instruction as part of its instruction to the jury:

> Another factor for you to consider in evaluating the witnesses' testimony is whether the witness has made material statements at some point before he or she testified which are different from his or testimony at trial. However, proof of any

prior statement by a witness other than by the defendant may be considered by you only for the purpose off determining if the witness is telling the truth at trial. The contents of the prior inconsistent statement are not to be considered as proof in the trial unless [the] prior inconsistent statement was [an] admission against interest by the defendant . . . .

However, the defendant cannot establish the other plain error factors in this case. Pursuant to Rules 607 and 613 of the Tennessee Rules of Evidence, "[p]rior inconsistent statements may be admissible only for the purpose of impeachment and not as substantive evidence." State v. Kiser, 284 S.W.3d 227, 266 (Tenn. 2009) (citing State v. Martin, 964 S.W.2d 564, 567 (Tenn. 1998)). "Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless and until the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon . . . ." Tenn. R. Evid. 613(b). Thus, after Ruby Fink during cross-examination denied making the comment that she hoped the victim died, the Rules of Evidence permitted the State to introduce extrinsic evidence that Fink in fact made the offending comment.

The defendant argues that Kephart's rebuttal testimony should have been excluded because it was admitted largely "to inflame[] the passions of the jury" and that "[i]ts probative value as to [the defendant's] state of mind was either minimal or misplaced, while the danger of unfair prejudice resulting from the jury hearing [the testimony] was great." It is well settled that "[t]he trial court may exclude evidence of the prior inconsistent statement if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or a risk of undue delay." Hunter v. Ura, 163 S.W.3d 686, 698 (Tenn. 2005) (citing Tenn. R. Evid. 403). However, in this case, the danger of unfair prejudice did not substantially outweigh the statement's probative value for impeachment purposes. Ruby Fink and other witnesses denied that she made the statement both before and after Kephart's rebuttal testimony, thus allowing the jury adequate opportunity to determine the credibility of both Fink and Kephart. Additionally, the trial court twice instructed the jury that testimony regarding prior inconsistent statements is only to be used for impeachment purposes and not as substantive evidence. The jury is presumed to have followed the trial court's instructions. Kiser, 284 S.W.3d at 272. The fact that the jury found the defendant not guilty of premeditated first degree murder further indicates that the jury followed the instruction. We therefore conclude that the defendant is not entitled to relief on this issue.

State's Closing Argument

Finally, the defendant argues that two comments made by the State during its closing argument constituted prosecutorial misconduct. We disagree.

The defendant did not raise this issue in her motion for new trial. Therefore, as she admits in her brief, she is limited on appeal to plain error review. See Tenn. R. App. P. 36(b). The record does reflect what occurred in the trial court. During its closing argument, the State read from the

transcript of the 911 call in which Shults was reported shot.[3] After a while, the prosecuting attorney said, "Then in the background you can hear - - and it's not on the transcript, but you can hear Ruby [Fink] say . . . 'I hope the son-of-a-bitch dies.'" Defense counsel objected on the grounds that the comment did not appear in the transcript. The trial court sustained the objection and issued the following limiting instruction: "The jury will disregard whose voice may have said that. You can listen to the tape and see if someone said it, but the Attorney General cannot testify about whose voice it was."

Later, the prosecuting attorney told the jury, "You are going to hear somebody say 'F.U. He's the reason my baby is not here today.' And I'll submit to you that that was [the defendant]." Defense counsel objected, and the trial court sustained the objection. The trial court did not give a limiting instruction after sustaining the objection, nor did the defendant seek such an instruction.

The defendant cannot establish the existence of the other plain error factors. Our supreme court has recognized that closing argument is a valuable privilege for both the state and the defense and that counsel is afforded wide latitude in presenting final argument to the jury. See State v. Cribbs, 967 S.W.2d 773, 783 (Tenn. 1998); State v. Cone, 665 S.W.2d 87, 94 (Tenn. 1984). However, a party's closing argument "must be temperate, predicated on evidence introduced during trial, relevant to the issues being tried, and not otherwise improper under the facts or law." State v. Middlebrooks, 995 S.W.2d 550, 568 (Tenn. 1999). This court, citing to standards promulgated by the American Bar Association,[4] has identified "five general areas of prosecutorial misconduct": (1) intentionally misstating the evidence or misleading the jury as to inferences it may draw; (2) expressing the prosecutor's personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant; (3) using arguments calculated to inflame the passions or prejudices of the jury; (4) using arguments that would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused or by predicting the consequences of the jury's verdict; and (5) intentionally referring to or arguing facts outside the record unless the facts are matters of public knowledge. State v. Goltz, 111 S.W.3d 1, 6 (Tenn. Crim. App. 2003) (citations omitted).

The defendant argues that both challenged statements were designed to inflame the passions of the jury and that the State's assertion that the defendant was the one who said that the victim was "the reason my baby is not here today" was a misstatement of the evidence, given that Teresa Staggs had testified on cross-examination (in response to questioning by the State) that Christy Staggs, not the defendant, made that statement. Even assuming that the challenged statements were improper, we note that not all errors in closing argument necessitate a new trial. When a prosecutor's argument goes beyond the latitude afforded, the test for determining if reversal is required is whether the improper statement was so inflammatory that it "affected the verdict to the prejudice of the

_____

[3] Neither the recording of the 911 call nor the transcript from the recording appears in the record.

[4] See American Bar Association, ABA Standards for Criminal Justice: Prosecution and Defense Function §§ 3-5.8, 3-5.9 (3d ed. 1993).

-11-

defendant." <u>Harrington v. State</u>, 385 S.W.2d 758, 759 (Tenn. 1965); <u>see also</u> <u>State v. Gann</u>, 251 S.W.3d 446, 459 (Tenn. Crim. App. 2007). Factors relevant to that determination include: (1) the disputed conduct viewed in light of the circumstances and facts in the case; (2) any curative measures taken by the trial court and the prosecution; (3) the prosecutor's intent in making the improper statements; (4) the cumulative effect of the prosecutor's statements and other errors in the record; and (5) the relative strength and weakness of the case. <u>Gann</u>, 251 S.W.3d at 460 (citing <u>Judge v. State</u>, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976)).

In this case, the trial court issued a curative instruction following the first challenged statement, the evidence of the defendant's guilt was substantial, and the jury rejected the State's theory that the defendant and her family blamed the victim for Eddie Staggs's death through its acquittal on the first degree murder charge. Accordingly, the State's comments during closing argument cannot be considered so inflammatory that they affected the verdict to the defendant's prejudice. We therefore conclude that the defendant is not entitled to plain error relief on this issue.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE