## IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE

**FOR PUBLICATION**

**Filed:** ___March 9, 1998___

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | DAVIDSON COUNTY CRIMINAL |
| | ) | No. 93-B-879 |
| APPELLEE, | ) | |
| | ) | |
| v. | ) | Hon. Seth Norman, Judge |
| | ) | |
| HENRY LEE MARTIN, | ) | |
| | ) | |
| APPELLANT. | ) | No. 01S01-9611-CR-00225 |

**FILED**

**March 9, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

FOR APPELLANT:

Jeffrey A. DeVasher
Assistant Public Defender
Nashville

James P. McNamara
Assistant Public Defender
Nashville

FOR APPELLEE:

John Knox Walkup
Attorney General and Reporter

AND

Michael E. Moore
Solicitor General

Karen M. Yacuzzo
Assistant Attorney General
Nashville

# O P I N I O N

AFFIRMED AS MODIFIED                    HOLDER, J.

**OPINION**

A jury convicted the defendant, Henry Lee Martin, of especially aggravated robbery. He was sentenced to twenty-two years imprisonment and fined five thousand dollars. The Court of Criminal Appeals affirmed both his conviction and his sentence. We granted review to determine whether Tenn. R. Evid., Rule 613(b) mandates that a foundation be laid prior to the introduction of extrinsic evidence of a witness' prior inconsistent statement. We hold that extrinsic evidence remains inadmissible until: (1) the witness is asked whether the witness made the prior inconsistent statement; and (2) the witness denies or equivocates as to having made the prior inconsistent statement.

**FACTS**

On February 24, 1993, the defendant entered a One Price Clothing store in Nashville. Ms. Hollingsworth testified that she spoke with the defendant for approximately ten minutes and showed him several garments. She, however, became frustrated at the defendant's indecisiveness. She told the defendant to let her know if he required further assistance. She went back to the front of the store. A short time later, the defendant again requested her assistance. She assisted him for an additional five to ten minutes. The defendant requested a garment in a size not on the rack. Ms. Hollingsworth then went into the stockroom to determine whether they had the garment in the requested size.

Ms. Hollingsworth had a short conversation with another store employee, Ms. Blakely, while in the stockroom. Ms. Hollingsworth then realized that the defendant had followed her part of the way into the stockroom. She turned to

2

the defendant, informed him that the requested size was not available and asked whether there was anything else she could show him.

The defendant later requested Ms. Hollingsworth's assistance for a third time.  On this occasion, the defendant appeared to have an object in his hand.  He lured her into a back corner of the store.  As she was taking an item from the rack, the defendant stabbed her and threw her onto the floor.  He then pulled her to her feet, stood behind her and held a knife to her throat.

The defendant directed both Ms. Hollingsworth and Ms. Blakely to enter the stockroom where he bound Ms. Blakely's hands and feet together with duct tape.  He then forced Ms. Hollingsworth to accompany him to the cash register.  Ms. Hollingsworth told the defendant how to open the register.  The defendant then led Ms. Hollingsworth back into the stockroom where he asked Ms. Blakely to confirm the procedure for opening the cash register without setting off an alarm.

The defendant and Ms. Hollingsworth proceeded back to the cash register.  She opened the register and placed the register's contents into a bag.  The defendant led Ms. Hollingsworth back into the stockroom and forced her to lie on the stockroom floor next to Ms. Blakely.  He then placed boxes and chairs on top of them and fled the store.

Ms. Hollingsworth was able to crawl out from beneath the boxes and chairs.  She then summoned help from a customer who had entered the store.  She was transported to the hospital where she spent thirty-six hours in intensive care and an additional three days in a regular hospital room prior to being

3

released. She sustained a collapsed lung as a result of the defendant having stabbed her.

Ms. Hollingsworth provided the police with a description of the defendant. She later was able to identify the defendant from a photographic line-up. She testified that she had no doubts concerning her identification of the defendant as the perpetrator.

Ms. Blakely testified that she had worked at the One Price Clothing Store on February 24, 1993. She stated that she had seen the defendant in the store on February 24, 1993, and that Ms. Hollingsworth had assisted the defendant. She further stated that she got a good look at the defendant while Ms. Hollingsworth was assisting him. Ms. Blakely was positive that the defendant was the perpetrator.

Lennie Covington, the investigating officer, testified. He stated that an apartment where the defendant had resided in February, 1993, was located on a hill that overlooked the One Price Clothing Store. He identified photographs of a path which lead from the apartment complex where the defendant had resided to the One Price Clothing Store.

Patricia Berry, the defendant's girlfriend, testified as an alibi witness. She stated that she and the defendant had resided together in February, 1993. She stated that they injected cocaine on a daily basis and that she and the defendant supported their habit by stealing. Their typical day consisted of "get[ting] high" and shoplifting to "get some more [dope]." Ms. Berry testified that on the date of the robbery, she had worked until three o'clock in the afternoon. She and the defendant "did some cocaine" that afternoon and later "went out boosting,

4

shoplifting" so that they could purchase more cocaine. On cross examination, Ms. Berry appeared to have some initial confusion as to whether she had worked on February 23 or February 24, the date of the robbery. She, however, maintained that she could remember the events of those days clearly and that the defendant was with her at their apartment, injecting cocaine during the time of the robbery.

During the state's cross examination, Ms. Berry admitted talking to officer Covington, the arresting officer, at the time of the arrest. She agreed that she did not tell officer Covington that the defendant could not have committed the robbery because he had been with her at the time of the arrest. The following colloquy occurred between the state and Ms. Berry:

> Q. And you knew that [the defendant] had not done that because he had been with you, and the two of you were together?
>
> A. Yes.
>
> Q. Did you tell Detective Covington that?
>
> A. No, Sir. I didn't tell nobody nothing. I haven't talked to anybody.
>
> Q. You talked to Detective Covington that day, didn't you?
>
> A. That day he picked us up from Murfreesboro? We both talked to him, yes. . . . I probably did. I was thinking the day that I worked was on a Tuesday. And it was not on a Tuesday. It was on a Wednesday. At the beginning. . . . I mistaked [sic] my days.
>
>  . . .
>
> Q. Okay. My question to you was, did you tell Officer Covington when you were arrested that he couldn't have done it, that he was with me that day at my apartment?
>
> A. No. I did not tell him that.

On rebuttal, the state called officer Covington to testify that the defendant initiated a conversation while the defendant and Ms. Berry were in the back seat of Covington's car. The defendant asked on what date the robbery occurred. When told the date, Martin then turned to Ms. Berry and asked if she knew where he had been on that night. Ms. Berry responded, "I don't know where you were, I was in the motel."

## DISCUSSION

The issue with which we are confronted is whether the officer's testimony was properly admitted as extrinsic evidence of a prior inconsistent statement made by Ms. Berry. The Court of Criminal Appeals held that a foundation was not a prerequisite to the admission of the extrinsic evidence under Tenn. R. Evid., Rule 613(b). Pursuant to Tenn. R. Evid., Rule 613(b):

> [e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require.

The origin of Rule 613 is the rule in Queen Caroline's Case, 2 Br. & B. 284, 129 Eng. Rep. 976 (1820). The rule in Queen's case states:

> If it be intended to bring the credit of a witness into question by proof of anything he may have said or declared touching the cause, the witness is first asked, upon cross-examination, whether or not he has said or declared that which is intended to be proved.

6

Accordingly, the rule in Queen's case required a cross-examiner to confront a witness with the contents of a prior inconsistent statement before the introduction of extrinsic evidence.

The Tennessee practice traditionally has adhered to the procedures set forth by the rule in Queen's case. Hardin v. State, 355 S.W.2d 105, 113 (Tenn. 1962); State v. Frahm, 737 S.W.2d 799, 802 (Tenn. Crim. App. 1987); State v. McDougle, 681 S.W.2d 578, 583 (Tenn . Crim. App. 1984); State v. Mackey, 638 S.W.2d 830, 835 (Tenn. Crim. App. 1982). This practice required that a witness' attention be drawn to the place, persons present, time of the statement, and to the substance of the statement before extrinsic evidence of the prior inconsistent statement could be used to impeach the witness' credibility. Middle Tenn. R.R. Co. v. McMillan, 134 Tenn. 490, 515-16 (1915). The foundational requirements were to: (1) provide the witness an opportunity to admit, deny, or explain the prior inconsistent statement; (2) refresh the witness' memory; and (3) allow the witness to respond intelligently to the impeachment attempt. Id.; see Moore v. Bettis, 30 Tenn. 67, 69 (1850) (holding it a "manifest injustice" to impeach a witness' character without first calling attention to statement and allowing an opportunity to explain). Both Rule 613 and the Advisory Commission comments to Rule 613 omit any reference to timing or sequence. The Advisory Commission comments, however, do affirmatively note that the implementation of Rule 613 "will not change drastically [former]

7

Tennessee procedure."[1] Tenn. R. Evid. 613, Advisory Commission Comments citing Moore, supra.

The purpose of Rule 613(b) is to allow introduction of otherwise inadmissible extrinsic evidence for impeachment. See State v. Reece, 637 S.W.2d 858, 861 (Tenn. 1982) (stating that prior inconsistent statement may be considered only on the issue of credibility and not as substantive evidence). Extrinsic evidence of a prior inconsistent statement remains inadmissible when a witness unequivocally admits to having made the prior statement. See State v. Grady, 619 S.W.2d 141, 143 (Tenn. Crim. App. 1979) (noting general rule that extrinsic evidence of prior inconsistent statement "is inadmissible if the witness unequivocally admits [to] making [the prior statement]"). The unequivocal admission of a prior statement renders the extrinsic evidence both cumulative and consistent with a statement made by the witness' during trial. Extrinsic evidence of a prior consistent statement is generally inadmissible and not subject to Rule 613(b).[2] See State v. Boyd, 797 S.W.2d 589 (Tenn. 1990); State v. Braggs, 604 S.W.2d 883 (Tenn. Crim. App. 1980). Accordingly, the admissibility of the extrinsic evidence is contingent upon whether the witness admits or denies having made the prior inconsistent statement.

---

[1] The sole apparent change to former practice made by Rule 613 concerns written statements.

[2] Upon an unequivocal admission by the witness, the extrinsic evidence remains relevant for only two purposes: (1) to bolster the witness' credibility in admitting to having made the pre-trial statement; or (2) as substantive evidence that the witness' prior statement was true.

We further believe it illogical to allow admission of the extrinsic evidence prior to the witness' admission or denial. Confronting a witness prior to the introduction of extrinsic evidence provides for an orderly presentation of evidence and testimony. Time is saved if the witness unequivocally admits to having made the prior statement. Moreover, confronting a witness with an inconsistency prior to the introduction of the extrinsic evidence lessens the risk that a jury will consider the evidence as substantive evidence. We, therefore, hold that extrinsic evidence remains inadmissible until the witness either denies or equivocates as to having made the prior inconsistent statement. See State v. Kendricks, 947 S.W.2d 875, 881 (Ct. Crim. App. 1996) (holding extrinsic evidence admissible when witness denies or does not recall making prior inconsistent statement).

We note that Rule 613(b) of the Federal Rules of Evidence is identical to Rule 613(b) of the Tennessee Rules of Evidence. The federal advisory comments, however, state that a foundation may either be laid before or after an offer of the extrinsic evidence. While there exists a split of authority as to the timing of the foundation, several circuits have clearly expressed a preference for the traditional approach in light of the difficulties the change has caused. See U.S. v. Bonnett, 877 F.2d 1450, 1462 (10th Cir. 1989) (preferring traditional approach so trier of fact can "observe [witness] demeanor and the nature of his testimony as he denies or explains his prior testimony."); Wammock v. Celotex, 793 F.2d 1518 (11th Cir. 1986) (holding "[r]ule 613(b) does not supplant the traditional method of confronting a witness with his inconsistent statement prior to its

9

introduction."); <u>U.S. v. McGuire</u>, 744 F.2d 1197, 1204 (6th Cir. 1984) (stating "[w]e do not approve of the government's not informing the defendant of this evidence, which we view as a questionable trial tactic."); <u>U.S. v. Barrett</u>, 539 F.2d 244, 254 (1st Cir. 1976) (noting traditional foundational good practice though not required).

While Tenn. R. Evid., Rule 613(b) substantially maintains former Tennessee procedure, the rule also ameliorates the harsh effect of strictly applying the rule in Queen's case. Rule 613(b) permits the trial court to depart from the foundational requirements when "the interests of justice otherwise require." Tenn. R. Evid., Rule 613(b). This clause provides flexibility to deal with the extraordinary case in which the strict application of the rule in Queen's case would lead to injustice. <u>See</u> Saltzburg, <u>Federal Rules of Evidence Manual</u>, 6th Ed., Vol. 2 (1994) (noting that the strict application of the common law rule resulted in prohibiting extrinsic evidence when inconsistent statements were discovered after a witness testified and in prematurely alerting collusive witnesses to evidence available for impeachment).

The case now before us is not the extraordinary case. The state was aware of Ms. Berry's prior inconsistent statement and had ample opportunity to lay a foundation before it attempted to admit the extrinsic evidence. The state, however, never asked Ms. Berry whether she had made a prior statement to the defendant or to anyone else that she did not know the defendant's whereabouts at the time of the robbery. Accordingly, Ms. Berry was not provided an opportunity to admit or

deny her pre-trial statement to the defendant.  Officer Covington's testimony, therefore, was erroneously admitted.

A violation of an evidentiary rule may not mandate reversal if the error "was more probably than not harmless." United States v. Barrett, 703 F.2d 1076, 1081-82 (9th Cir. 1983). See also Wilson v. State, 724 S.W.2d 766, 769  (Tenn. Crim. App. 1986) (noting that "harmless error analysis applies to virtually all trial errors except the denial of counsel and the partiality of the adjudicator."). Pursuant to Tenn. R. Crim P., Rule 52(a), "[n]o judgment of conviction shall be reversed on appeal except for errors which affirmatively appear to have affected the result of the trial on its merits."

Both victims positively identified the defendant and his voice.  Ms. Hollingsworth spent approximately thirty minutes assisting the defendant prior to being stabbed by him.  Ms. Blakely witnessed Ms. Hollingsworth assisting the defendant and stated that she got a good look at the defendant.  The defendant lived in close proximity to the store and attempted to evade the law when he found out that there was a warrant for his arrest in connection with the robbery. See State v. Williams, 638 S.W.2d 417, 421 (Tenn. Crim. App. 1982) (holding jury may draw inference of guilt from fact that defendant attempted to flee or evade arrest).  The defendant's own alibi witness exhibited some confusion and testified that she and the defendant injected cocaine and shoplifted on a daily basis.  We, therefore, conclude that the evidence against the defendant was overwhelming and find that the erroneous admission of Officer Covington's testimony did not "affirmatively appear to have affected" the outcome of the trial.

The Court of Criminal Appeals judgment is affirmed as modified. Costs of this appeal are taxed to the appellant, Henry Lee Martin, for which execution may issue if necessary.

_____
Janice M. Holder, Justice

**CONCURRING:**

Anderson, C.J.
Drowota, Reid and Birch, JJ.