IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
March 6, 2001 Session

## STATE OF TENNESSEE v. ORLANDO CRAYTON

**Direct Appeal from the Circuit Court for Gibson County**
**No. 15530      Donald Allen, Judge**

---

**No. W2000-00213-CCA-R3-CD - Filed June 27, 2001**

---

The defendant, Orlando Crayton, was convicted of aggravated assault, reckless endangerment, unlawful carrying or possession of a weapon, and two counts of vandalism under $500.00. The trial court sentenced the defendant to 11 months, 29 days for each vandalism count, six years for aggravated assault, two years for reckless endangerment and 11 months, 29 days for unlawful possession of a weapon. Because the sentences were ordered to be served concurrently, the effective sentence is six years. In this appeal of right, the defendant challenges (1) the admissibility of evidence indicating the defendant's gang affiliation; (2) the admission of an estimate regarding the damage to a vehicle; and (3) the admission of a hearsay statement. The judgment is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed.**

GARY R. WADE, P.J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA MCGEE OGLE, JJ., joined.

David W. Camp, Jackson, Tennessee, for the appellant, Orlando Crayton.

Paul G. Summers, Attorney General & Reporter; Laura E. McMullen, Assistant Attorney General; Clayburn Peeples, District Attorney General; and Theodore Neumann, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On February 13, 1998, at around 10:00 p.m., a fight involving the defendant, Orlando Crayton, his friend, Courtney Von Shon Martin[1], and the victim, Marcus Williams, occurred inside a McDonald's restaurant in Trenton. Other customers were also involved. According to the police, several tables and chairs were destroyed inside the restaurant. Shortly after the fight moved into the

---

[1]Martin was convicted of aggravated assault stemming from his involvement in the facts of this case.

parking lot, gunshots destroyed one of the restaurant's plate glass windows and damaged a vehicle parked in the restaurant lot. The police reported that the defendant had fired the shots.

At trial, the victim testified that when he entered the restaurant, the defendant was speaking to certain people in a "threatening manner," calling them "punks . . . and [saying] he's in their neighborhood and they ain't going to do nothing to him." The victim recalled that when he walked by the defendant, the defendant informed him that he was "marked" as a "hit" because he was a "vice lord." The victim and the defendant argued and began to fight. The victim described the altercation as a one-on-one fight until Martin attempted to intervene. At this point, the victim's friend hit Martin and then "everybody else jumped up." When the scuffle moved outside, the victim saw the defendant reach into the passenger's side of a car and grab what looked like a handgun. The victim claimed that when the defendant passed the gun to Martin, who loaded it, he directed those standing behind him to return to the restaurant. They discovered, however, that the door had been locked, and Martin began shooting at the victim. According to the victim, Martin then fired at least two shots in his direction and two more at a parked car as Martin and the defendant left the scene. The victim also stated that a female in the Martin car had taken the weapon from under the backseat and handed it to Martin. On cross-examination by the defense, the victim acknowledged that he once shot at police officers in North Carolina after they caught him selling illegal drugs. He also admitted that he had a prior burglary conviction.

Daron Sells, the owner and operator of the McDonald's restaurant, testified that after the incident, there was a hole in a window and numerous tables and chairs had been overturned. The cost of a replacement window was $365.40.

James Weaver, an investigator with the Trenton Police Department, testified that when he arrived at the scene, there were several people in the parking lot area and several more inside the restaurant. After learning that a shooting had occurred, he found a broken window on the north side of the restaurant near the entrance. Officer Weaver discovered a spent round in the base of a wall. In the parking lot, he observed a car with a window shot out and a flat tire.

Stacy Mayberry, who was a restaurant customer, testified that he observed the argument between "some boys from Trenton and some boys from Milan." He was still at the restaurant when the fight "broke out." Mayberry recalled that when the fight moved outside, he heard gunshots. He could not identify who fired the weapon. Mayberry learned after the police arrived that a window and wheel rim of his Chevrolet Caprice had been struck by bullets. He testified that the repair estimate was $295.85.

Eric Mayberry, was with his brother Stacy on the night of the crimes. He testified that the fight began when the victim struck the defendant. Soon afterward, "everybody started fighting."

At trial, Martin testified that he alone was responsible for the shooting. He stated that after the fight moved outside, he went to his car, opened the door, grabbed a pistol and fired shots at a small crowd of people standing near the entrance of the restaurant. Describing himself as a friend

of the defendant, Martin claimed that he had left a basketball game just before arriving at the McDonald's. He had driven to the restaurant in his white Chevrolet Impala. The defendant rode with Cecelia Adams. Martin contended that the fight began when the victim struck the defendant from behind and then some 12 people "started jumping on him." He insisted that the defendant did not hand him the gun and that the defendant had no knowledge of any gun in his car. Martin testified that after he fired the shots, the defendant "jumped" in the backseat of his Impala and that he then drove away. Martin acknowledged that he "got rid" of his gun about 10 minutes following the incident. He contended that Ms. Adams was never in his car and that the defendant was nowhere near the weapon when it was fired. Martin testified that he went for his gun because eight or more people had "jumped" him and pursued him and the defendant as they ran outside.

The defendant testified that he attended the basketball game on the night at issue and was a passenger in Ms. Adams' vehicle as she drove to the restaurant. As he exited the restaurant's bathroom, he heard Martin yell "[W]atch out." The defendant claimed that he was struck by the victim and fell to the ground when the victim continued his assault. He was helped outside after the victim discontinued the attack. He claimed that he found Martin's vehicle when he heard the gunshots. He further claimed that he did not know who fired the shots until Martin confessed. The defendant, who conceded he was drunk, contended that he never saw a gun in Martin's possession.

During the rebuttal stage of the trial, Guy Steven Howe of the Trenton Police Department testified that as he transported the defendant and Martin from Milan to Trenton after their arrest, Martin asked what would happen to them. The officer revealed that after informing them that they were being held on a "drive-by" and asking why the shooting had occurred at a McDonald's, Martin said, "[T]hat's where we found him . . . . [T]hat's where he's getting his ass shot at."

I

The defendant first asserts that the trial court erred by admitting character evidence concerning his gang affiliation. In particular, he maintains that he was prejudiced by testimony that he had put "a hit out" on the victim because he was a "vice lord."

Rule 404 of the Tennessee Rules of Evidence governs the admissibility of character evidence. Although the rule is usually applied to other crimes, wrongful acts, or misconduct, the language of the rule does not require that the acts covered by the rule be either criminal or wrongful. It states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait." Tenn. R. Evid. 404(b). According to the clear language of the rule, evidence of an act that may be neither criminal nor overtly wrongful is still subject to the requirements of Rule 404(b) if the state introduces the evidence to prove that a defendant acted in conformity with a given character trait. See Woodson v. Porter Brown Limestone Co., 916 S.W.2d 896, 908 (Tenn. 1996) (evidence relating to carefulness excluded); State v. Christopher David Wilson, No. 02C01-9502-CC-00045, slip op. at 18 (Tenn. Crim. App., at Jackson, Dec. 1, 1997) (Rule 404(b) not limited to other crime evidence). The general rule excluding such evidence is based on the recognition that the evidence may lead a jury to convict a

defendant for an apparent propensity or disposition to commit a crime regardless of the strength of the evidence concerning the offense on trial. State v. Bordis, 905 S.W.2d 214, 232 (Tenn. Crim. App. 1995); State v. Tizzard, 897 S.W.2d 732, 743-44 (Tenn. Crim. App. 1994). In those instances where the conduct or acts are similar to the crimes on trial, the potential for such a result increases. Bordis, 905 S.W.2d at 232.

In our view, evidence concerning gang affiliation is character evidence subject to Rule 404(b). Here, the defendant's character was never an issue. Although evidence of a prior act is not admissible to prove propensity or disposition to commit a crime, it may arguably be relevant to issues such as identity, intent, motive, or rebuttal of accident or mistake. Tenn. R. Evid. 404 Advisory Commission Comments; State v. Parton, 694 S.W.2d 299, 303 (Tenn. 1985). Therefore, unless the evidence was relevant to a material issue such as intent or motive, the testimony should have been excluded.

In allowing the statement to be submitted as evidence, the trial court ruled as follows:

[I] think [the testimony] is relevant. This is something [the defendant] apparently said directly to [the victim] which apparently is what started this altercation, so I think it is relevant.

We agree. The victim's testimony was relevant to establish a motive for the altercation. In our view, the probative value of the evidence outweighed the danger of unfair prejudice.

II

Next, the defendant claims that the trial court erred by admitting an estimate of repairs for the parked vehicle that was damaged in the shooting. He maintains that the evidence should not have been allowed because the person who prepared the estimate did not testify at trial. The defendant asks that one of the two vandalism convictions be set aside.

Initially, the state concedes that it did not establish a proper foundation to justify admission of the estimate under the business records exception of the hearsay rule. See Tenn. R. Evid. 803(6). The state maintains, however, that because there was sufficient evidence to convict the defendant for vandalism under $500.00, any error was harmless.

Business records are admissible as an exception to the rule against the introduction of hearsay evidence. See Tenn. R. Evid. 803(6). They may be introduced by the custodian of those records or any other qualified witness. See State v. Baker, 842 S.W.2d 261, 264 (Tenn. Crim. App. 1992). The custodian of the records to be introduced must be able to testify as to the identity of the records, the mode of preparation, and whether the records were made in the regular course of business at or near the time of the recorded event. Id. In this case, the records custodian did not testify to the authenticity of the records.

In our view, however, the error was harmless. There was substantial evidence to convict the defendant for vandalism under $500.00 notwithstanding the inadmissibility of the estimate of repairs. Here, there was evidence that the defendant handed a gun to Martin, who shot twice at Stacy Mayberry's car. There was also testimony that one of the shots destroyed the car window while the other struck the wheel and flattened a tire. So long as there was some damage, the evidence was sufficient to support the conviction for the vandalism to the car.

### III

In his last argument, the defendant contends that the trial court erred by allowing the testimony of Officer Howe, which was offered to rebut statements made by Martin. The defendant argues that the evidence was hearsay involving a collateral matter, too vague and ambiguous to have probative value.

The trial court ruled on the issue as follows:

> If Mr. Martin hadn't testified, this statement wouldn't be coming in at all in this trial, . . . but since he has testified it's coming in strictly for impeachment purposes. . . .

We agree. Rule 613 of the Tennessee Rules of Evidence permits the use of prior inconsistent statements to impeach a witness. The opposing party may interrogate the witness regarding such statements as long as the witness is "afforded an opportunity to explain or deny the same." Tennessee Rule of Evidence 616 provides that "[a] party may offer evidence by cross-examination, extrinsic evidence, or both, that a witness is biased in favor of or prejudiced against a party or another witness." In discussing the proper foundation for admission of extrinsic evidence of a prior inconsistent statement, our supreme court cited with approval the procedures traditionally employed before the implementation of Rule 613:

> This practice required that a witness' attention be drawn to the place, persons present, time of the statement, and to the substance of the statement before extrinsic evidence of the prior inconsistent statement could be used to impeach the witness' credibility. The foundational requirements were to: (1) provide the witness an opportunity to admit, deny, or explain the prior inconsistent statement; (2) refresh the witness' memory; and (3) allow the witness to respond intelligently to the impeachment attempt.

State v. Martin, 964 S.W.2d 564, 567 (Tenn. 1998).

Here, Martin was asked on cross-examination whether he made a statement to Officer Howe while being transported from Milan to Trenton. Initially, Martin claimed that he could not remember being transported to Trenton. Upon further questioning, Martin admitted to being transported to Trenton, but then claimed he could not recall making a specific statement concerning the restaurant

shooting. Because Martin was afforded the opportunity to explain or deny the statement, Howe's testimony was properly allowed to impeach the statement.

The defendant next maintains that the testimony should have been excluded because it involved a collateral matter that was not relevant or material to his prosecution. We disagree. The "collateral fact rule" limits the introduction of extrinsic proof of contradictory facts regarding collateral or irrelevant matters testified about during direct examination. See State v. West, 844 S.W.2d 144, 149 (Tenn. 1992). Here, Martin testified that he acted alone and that the defendant was not involved in the shooting. In his statement to Officer Howe, however, Martin implied that he and the defendant had acted together in the shooting. In our view, the statement was material to Martin's credibility on the central issue.

The defendant next argues that the statement was vague and ambiguous. Because the statement involved terms such as "we" and "him" without an explanation as to who the individuals were, the defendant argues a lack of probative value. The sole purpose of the cross-examination was to impeach Martin's testimony. The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). It was the obligation of the jury to ascertain the meaning, if any, of Martin's statements. This court may neither reevaluate the evidence nor substitute its inferences for those drawn by the trier of fact. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

Finally, the defendant contends that the statement was unduly prejudicial and outweighed any substantive probative value. See Tenn. R. Evid. 403. We disagree. Simply because evidence is prejudicial does not mean that it must be excluded as a matter of law. See State v. Gentry, 881 S.W.2d 1, 6 (Tenn. Crim. App. 1993). In this case, the statement was probative as to the credibility of Martin's testimony regarding the level of the defendant's involvement in the shooting. Accordingly, the judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE