# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### September 7, 2011 Session

## STATE OF TENNESSEE v. DIANE FORREST

### Direct Appeal from the Circuit Court of Carroll County
### No. 10CR11     Donald Parish, Judge

### No. W2011-00050-CCA-R3-CD  - Filed December 8, 2011

This case arises from charges that Diane Forrest ("the Defendant") concealed from police certain items used to make methamphetamine that her son had been using when his mobile methamphetamine lab exploded. A jury convicted the Defendant of one count of tampering with evidence and one count of accessory after the fact.  The trial court merged the accessory after the fact conviction into the tampering with evidence conviction. The Defendant was sentenced to three years, with forty-five days incarceration to be served prior to her release on probation.  On appeal, the Defendant argues that the trial court erred by: (1) excluding extrinsic evidence of a prior inconsistent statement made by an eyewitness; (2) admitting testimony about a second two-liter bottle found at the scene of the methamphetamine lab; (3) failing to dismiss the tampering with evidence charge at the close of the State's proof; (4) rendering a sentence that was disproportionately harsh; and (5) increasing the Defendant's appeal bond to $18,000. After a careful review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

Charles Griffith, Waverly, Tennessee, for the appellant, Diane Forrest.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; Hansel J. McCadams, District Attorney General; R. Adam Jowers, Assistant District Attorney, for the appellee, State of Tennessee.

## OPINION

## I. Background Facts & Procedure

The grand jury indicted the Defendant on three counts: (1) criminal attempt to commit aggravated child endangerment, Tenn. Code Ann. §§ 39-12-101; 39-15-402(a)(3);[1] (2) tampering with evidence, Tenn. Code Ann. § 39-16-503(a)(1); and (3) accessory after the fact, Tenn. Code Ann. § 39-11-411(a)(2). The following evidence was adduced at a jury trial held in the Circuit Court of Carroll County on July 28-29, 2010.

In the early evening hours of May 28, 2009, Timothy Bell, age 23, was sitting inside a pickup truck in front of Samuel Robertson Sr.'s home in Hollow Rock, Tennessee. Bell had come to pick up Robertson Sr.'s son, Samuel Robertson Jr. According to Bell, he and Robertson Jr. were "making meth." Inside the truck, Bell had a black duffle bag, which contained the necessary ingredients and supplies. He had already initiated the process in a two-liter plastic bottle inside the pickup truck, and he was picking up Robertson Jr. in order to go elsewhere on the Robertsons' land to finish the batch.[2] When Robertson Jr. got into the truck, the two-liter bottle burst into flames, engulfing Bell. Bell stumbled from the truck and rolled onto the ground while Robertson Jr. attempted to beat the flames off of him. The unmanned pickup truck caromed into the tree line across the street from the Robertson residence.

Robertson Sr.'s wife, Sherry Robertson, was inside her home when she saw her son frantically trying to put out the fire consuming Bell. Mrs. Robertson yelled for her husband to help and went outside. Eventually, the fire went out. Bell sustained severe burns to his face, upper body, arms, and hands. The Robertsons called for an ambulance. They also contacted Bell's mother, the Defendant, who lived approximately five miles away. While waiting for the ambulance, Robertson Sr. noticed a black duffle bag sitting in his driveway, near the road. He recognized that certain items in the bag were commonly used to make methamphetamine. Robertson Sr. testified that he moved the bag from his driveway to the back of Bell's truck.

---

[1] The criminal attempt to commit aggravated child endangerment charge stemmed from allegations that the Defendant instructed a seventeen-year-old girl to transport a black duffle bag containing active, volatile methamphetamine ingredients.

[2] Bell and Robertson Jr. were using the "shake and bake" method of methamphetamine manufacture, in which a single vessel houses the ingredients and "cooks" the drugs. According to testimony at trial, the shake and bake method takes approximately thirty minutes to an hour to produce a batch of methamphetamine.

The Defendant testified that when she got the telephone call from the Robertsons, she believed that her son had been in a car wreck. She rushed out of her house, leaving her husband, Richard Forrest, and seventeen-year-old Sarah Morris behind.[3] She drove the short distance to the Robertson residence and arrived at the scene of the accident before police or rescue personnel. The Defendant testified that when she arrived at the Robertsons', she asked Mrs. Robertson what had happened and was told that a methamphetamine lab had exploded.

Both Robertson Sr. and Mrs. Robertson testified that, after arriving on the scene, the Defendant walked over to Bell's truck, picked up the black duffle bag that Robertson Sr. had placed in the truck, and put it in the trunk of her own car. The Defendant denied this allegation. She testified that Bell was screaming at her to get his cell phone from his truck and that she did as instructed but touched nothing else. At trial, Bell initially denied making this request, but later stated that he did not recall telling the Defendant to get his cell phone from his truck.

According to Robertson Sr., an ambulance arrived on the scene "between fifteen and thirty minutes" after the Defendant. Deputy Chris Byrd of the Carroll County Sheriff's Department was the first police officer on the scene, arriving shortly after the ambulance. Sergeant Andy Dickson of the Carroll County Sheriff's Department arrived soon after Deputy Byrd. Deputy Byrd and Sergeant Dickson immediately suspected that the fire had been caused by a methamphetamine lab explosion. They found several items identified as "precursors" to methamphetamine scattered about the scene. In the front seat of Bell's truck, officers found coffee filters; on the floor board they found salt; and on the running board they found packaging for lithium batteries. Outside of the vehicle was a jar of canning salt, and in the woods nearby officers found a camp fuel container. According to Sergeant Dickson, each of these items is commonly used in the methamphetamine manufacturing process. Sergeant Dickson testified at trial that "there was no doubt that . . . a methamphetamine lab had been present."

Bell was treated on the scene and transported to a hospital. Because both paramedics were needed to attend to Bell during transport, Sergeant Dickson drove the ambulance to the hospital. According to Sergeant Dickson, he left orders with Deputy Byrd to "stay with the scene" and "not let anybody go in and out" or "be messing around with the vehicle or things in that area." After delivering Bell to the hospital, Sergeant Dickson returned to the scene with Sergeant Tim Megs of the Carroll County Sheriff's Department. Sergeant Megs is a

_____

[3] Morris testified that the Defendant is her grandmother's half-sister but that she called the Defendant "my aunt." As discussed in more detail below, Morris lived at the Defendant's home after being placed there by the Tennessee Department of Children's Services.

narcotics investigator, and he concurred with Dickson and Byrd that a methamphetamine lab had been present. In addition to the items described above, Sergeant Megs found a burnt two-liter bottle, a Ziplock bag, a cut white t-shirt, and some mail addressed to Bell inside a nearby trash can.[4]

Eventually, Richard Forrest and Sarah Morris arrived in Forrest's white Jeep. By this point, several people, including Robertson Sr., Mrs. Robertson, Forrest, Morris, and the Defendant, were present at the scene of the explosion during the police investigation.[5] Deputy Byrd testified that because an ongoing investigation was taking place, the police attempted to keep any witnesses, including the Defendant, secure and separated.

While Sergeants Dickson and Megs were investigating Bell's truck, which had rolled across the street, the Defendant asked Deputy Byrd whether she could go into the Robertsons' home to use the restroom. The Defendant testified that she asked "two or three times and they wouldn't let me go." Eventually, Deputy Byrd checked with Sergeant Megs, who allowed the Defendant to go to the restroom. Mrs. Robertson testified that she escorted the Defendant to use the Robertsons' restroom.

According to Mrs. Robertson, while the police officers were at Bell's truck, the Defendant opened the trunk of her own car and instructed Morris to take the black duffle bag out of the trunk and carry it to the woods near the Robertsons' house. Mrs. Robertson testified that after the Defendant instructed Morris to "take the bag and hide it," Morris took the bag to the woods and left it there. After watching Morris do this, Mrs. Robertson told the Defendant to "go get the bag and put it back where it was" because "I didn't want that kind of stuff on my property." The Defendant did not immediately comply with Mrs. Robertson's demand. Mrs. Robertson then told her husband what she had witnessed and told him that he needed to instruct the Defendant to retrieve the bag from the woods. Robertson Sr. testified that, after speaking with his wife, he told the Defendant and Forrest that he did not want the bag on his property. He testified that he never saw what happened to the bag after this discussion with the Defendant and Forrest. According to Mrs. Robertson, the Defendant then instructed Morris to go back to the woods and retrieve the bag. Mrs. Robertson testified that she only saw Morris retrieve the bag from the woods but did not see what she did with it afterwards.

---

[4] Robertson Sr. testified that he cut Bell's shirt off his body and threw it in the trash can.

[5] It appears that other people may have been present at the scene at various points in the evening; however, their presence was not fully developed at trial and is not relevant on appeal.

Sergeant Megs eventually became aware of the existence of the black duffle bag. He also became aware that the bag had at one point been placed in the back of the Defendant's vehicle. Consequently, Sergeant Megs asked the Defendant whether he could search her vehicle; she replied that she would like to speak to an attorney. Sergeant Megs told her that she was free to leave but that her vehicle would have to stay at the scene. He then asked Forrest whether he could search his Jeep, and Forrest consented.

Sergeant Megs opened the rear driver-side door to the Jeep and found a black duffle bag in the floor board between the front and back seats. The bag was concealed by an article of clothing. Inside the bag were burnt paper towels, Ziplock bags matching those discovered in the trash can, a coffee-bean grinder, a small tea pitcher, Red Devil lye, and ammonium nitrate. Sergeant Megs testified that each of these items was commonly used to make methamphetamine. The duffle bag also contained a two-liter plastic bottle with liquid and strips of lithium suspended in it. According to Sergeant Megs, the contents of this two-liter bottle tested positive for methamphetamine and, in fact, were still "bubbling" from the manufacturing process at the time the bag was discovered.

At trial, Bell stated that he had only used one two-liter bottle to make methamphetamine on the day of the explosion. Bell surmised that this bottle was the one found in the black duffle bag that tested positive for methamphetamine. The Defendant, however, testified that she found a second two-liter plastic bottle "flattened" in the Robertsons' driveway. She said that she handed it to Robertson Sr., who said "he would take care of it." Robertson Sr. remembered seeing the flattened two-liter bottle on the ground; however, he remembered police officers finding it, rather than the Defendant. Robertson Sr. could not recall whether the flattened bottle was ever placed in his trash can. Sergeant Megs testified that the two-liter bottle that he found in the trash can was burnt and contended that Bell was using two two-liter bottles that day: the one that exploded and was found inside the trash can, and the one found inside the black duffle bag that had not exploded.

No arrests were made that night. Bell was transported to the hospital, and everyone else was allowed to leave.[6] Approximately one month later, Sergeant Megs interviewed Morris. She provided a written statement to the effect that she had placed the black duffel

---

[6] Bell was eventually charged and pled guilty to attempt to initiate process to manufacture methamphetamine, Tenn. Code Ann. §§ 39-12-101; 39-17-435(a). Bell also pled guilty to a second charge of attempt to initiate process to manufacture methamphetamine after he was arrested for operating a different methamphetamine lab. He was sentenced, respectively, to four years and three years, with the sentences set to run consecutively.

bag inside Forrest's Jeep after the Defendant instructed her to do so.[7] Morris testified at trial that the Defendant told her that a black duffle bag was in the Defendant's vehicle, "and it needed to be removed because they done [*sic*] asked her to search her car." Morris testified that she then got the duffle bag out of the Defendant's vehicle and took it to the woods. According to Morris, as she was walking back from the woods, she was told by Mrs. Robertson "that it [i.e., the bag] wasn't going to be on her property." Morris then retrieved the bag from the woods and placed it in the floorboard behind the driver's seat in Forrest's Jeep. She stated at trial that the Defendant told her to put the black duffle bag in the Jeep. She also said that the Defendant handed her four lithium batteries and instructed her to stick them inside a tool box in the back of the Jeep, which she also did. Morris admitted that she could have told the Defendant "no" and refused to hide the duffle bag and batteries but didn't because she was "scared" of the Defendant, whom she said had a "temper."

The Defendant denied all allegations against her at trial. She stated that she did not know that Bell was involved in making methamphetamine and believed that he had been injured in a car wreck. Bell testified that neither the Defendant, nor Forrest, knew that he was making methamphetamine. He stated that the Defendant was against the use of illegal drugs because of prior instances of drug abuse in her family.

The Defendant denied knowing that an investigation into a suspected methamphetamine lab was ongoing at the scene of the fire. During cross-examination, however, the Defendant admitted that Mrs. Robertson had told her as much when she arrived on the scene, and, contradicting her earlier testimony, admitted to knowing a police investigation was ongoing. The Defendant said that she did not see the black duffle bag until Sergeant Megs pulled it out of her husband's Jeep. She denied seeing anyone walking around with the bag and denied telling Morris to do anything with the bag. She denied taking the bag out of Bell's truck.

The Defendant testified that she did not think the Robertsons were telling the truth. The Defendant also believed that Morris was lying because she was mad at the Defendant. She explained that Morris had behavioral problems while living with the Defendant, including sneaking out of the house, sneaking boys into her bedroom, and stealing the Defendant's prescription pills. Bell confirmed that Morris had behavioral problems while living with the Defendant, saying that "[s]he's just been a handful for my mom." The Defendant said that around the time that Morris spoke with Sergeant Megs, the Defendant had told her to leave the house and "go live somewhere else."

---

[7] The written statement was not introduced at trial; however, Sergeant Megs and Morris both testified to its general contents.

Forrest stated that he had "no idea" how the black duffle bag got into his Jeep. He testified that the bag was not in his Jeep when he arrived at the Robertsons' residence. He said that he never saw the Defendant with the duffle bag and never heard her tell Morris to do anything with the bag or any other evidence against Bell. Forrest testified that the Defendant was always within his eyesight and earshot except for one time when she went to the bathroom. He admitted that Morris was not within his eyesight the whole time and that she went into the Robertsons' house on three different occasions.

At trial, Forrest attempted to testify about a conversation he witnessed between Bell and Morris sometime after the explosion but before the Defendant's trial. According to Forrest, Bell asked Morris how the black duffle bag got into the Jeep, and she told him that she put it there. The State objected to this testimony. Defense counsel first argued that the proffered statement did not contradict Morris's trial testimony. Defense counsel then argued that, if allowed to develop, Forrest's testimony was being offered to impeach Morris's testimony. The trial court sustained the objection on the basis of hearsay. No offer of proof on this issue was made at trial.

At the close of the State's proof, the Defendant orally moved to dismiss the criminal attempt to commit aggravated child endangerment and accessory after the fact counts. The trial court interpreted the Defendant's motion as a motion for judgment of acquittal as to all three counts and denied the motion. At the close of the State's proof and at the close of all of the proof, the Defendant also orally moved that the State be required to elect between the criminal attempt to commit aggravated child endangerment and tampering with evidence counts. The trial court denied the motion both times.

Following deliberations, the jury acquitted the Defendant of criminal attempt to commit aggravated child endangerment, and convicted the Defendant of tampering with evidence and accessory after the fact. The jury assessed fines of $3,000 on the tampering with evidence conviction and $1,500 on the accessory after the fact conviction.

The trial court held a sentencing hearing on October 12, 2010. Only a portion of the transcript from the sentencing hearing is contained in the appellate record.[8] In the excerpted portion provided by the Defendant on appeal, Forrest testified to the effect that, were the

---

[8] Originally, no transcript from the sentencing hearing was contained in the appellate record. The Defendant filed a motion to amend the appellate record on April 19, 2011, seeking to add a portion of the transcript from the sentencing hearing containing Forrest's testimony and also requesting an extension of time to file her initial brief. No order from this Court was ever entered on the Defendant's motion; however, a partial sentencing hearing transcript containing only the testimony of Forrest was nevertheless submitted. In the interests of justice, we have decided to deem the partial transcript as an appropriate supplement to the record and will consider it as a part of the record in rendering our decision in this case.

Defendant incarcerated, he would need to quit his job to care for their minor child. Additionally, in an offer of proof, Forrest testified that he witnessed Morris telling Bell that "Sammy Robinson" handed her the bag and told her it was Bell's.[9]

The court ultimately merged the accessory after the fact conviction with the tampering with evidence conviction and sentenced the Defendant to three years, with forty-five days of incarceration to be served prior to her release on probation. The trial court also set the appeal bond at $18,000. The Defendant filed a motion for new trial which was denied by order entered December 10, 2010.

## II. Issues Presented

The Defendant timely appeals her conviction, raising the following issues, which we restate from her appellate brief:

> (1) Whether the trial court erred by disallowing testimony by Forrest to the effect that Morris had made a prior out of court statement that contradicted her trial testimony.
>
> (2) Whether the trial court erred by allowing testimony about a second two-liter bottle allegedly found in the Robertsons' driveway when the State's proof was that only one bottle had exploded in the truck cab.
>
> (3) Whether the trial court erred by not dismissing the tampering with evidence charge at the close of the State's proof.
>
> (4) Whether the sentence rendered by the trial court was disproportionately harsh.
>
> (5) Whether the trial court erred by increasing the Defendant's appeal bond at her sentencing hearing.

---

[9] It is unclear from the record who "Sammy Robinson" refers to here. From the Defendant's recitation of the facts in her appellate brief, it would appear that the name "Sammy Robinson" refers to Samuel Robertson, Jr.

### III. **Analysis**

#### *1. Exclusion of Morris's Prior Inconsistent Statement*

For her first issue, the Defendant asserts that the trial court erred when it did not allow Forrest to testify regarding an out of court statement made by Morris. At trial, Forrest testified that he had witnessed a conversation between Bell and Morris in which Morris related that she had placed the black duffle bag in the back of Forrest's Jeep. The State objected to this testimony.[10] Defense counsel first correctly argued that the statement merely repeated what Morris had already admitted in her testimony, that is, that she placed the bag inside the truck.[11] Defense counsel then argued that the statement was not hearsay because it was being offered to impeach Morris's testimony. The trial court sustained the State's objection on the ground of hearsay. No offer of proof was made at trial. In an offer of proof at the sentencing hearing, however, Forrest testified that Morris had told him and Bell that "Sammy Robinson" handed her the duffle bag, and, through implication, that it was not the Defendant who handed her the bag. On appeal, the Defendant argues that the trial court erred by not allowing Forrest's testimony regarding Morris's prior inconsistent statement.

The admission of evidence at trial is a matter entrusted to the sound discretion of the trial court, and we review a trial court's evidentiary rulings under an abuse of discretion standard. State v. Robinson, 146 S.W.3d 469, 490 (Tenn. 2004) (citing State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997)). An appellate court will find an abuse of discretion "only when the trial court applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party." State v. Banks, 271 S.W.3d 90, 116 (Tenn. 2008) (citing Konvalinka v. Chattanooga–Hamilton Cnty. Hosp. Auth., 249 S.W.3d 346, 358 (Tenn. 2008)).

Tennessee Rule of Evidence 802 excludes relevant evidence if it is hearsay. "'Hearsay' is a statement, other than one made by the declarant while testifying . . . offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). Extrinsic evidence that is otherwise inadmissible may be admissible for the purpose of impeachment under Tennessee Rule of Evidence 613(b). State v. Martin, 964 S.W.2d 564, 567 (Tenn. 1998). A statement offered for the purpose of impeaching a witness's testimony is "not admitted to prove the truth of the statement, but to show that the credibility of the witness is

---

[10] The State did not state a specific objection on the record.

[11] We note that, generally, extrinsic evidence of a prior consistent statement is inadmissible. State v. Martin, 964 S.W.2d 564, 567 (Tenn. 1998) (citations omitted).

suspect." State v. Howell, 868 S.W.2d 238, 252 (Tenn. 1993). Thus, when a witness's prior inconsistent statement is offered for impeachment purposes, it is not hearsay. Id. However, for such a statement to be admissible, a party must satisfy the procedural requirements of the applicable rule of evidence.

For the first time on appeal, the Defendant asserts that Forrest's testimony was admissible as an exception to the hearsay rule under Tennessee Rule of Evidence 803(26).[12] In July 2009, Rule 803 was amended to permit the introduction of certain prior inconsistent statements as substantive evidence. See Tenn. R. Evid. 803(26) Advisory Comm'n Cmts. As a threshold matter, we note that the Defendant did not advance an argument under Rule 803(26) either at trial or in her motion for a new trial. Consequently, the issue has been waived. Tenn. R. App. P. 3(e); see also Tenn. R. App. P. 36(a).[13]

Thus, we conclude that the only possible basis for admission of the statement was as a prior inconsistent statement only for purposes of impeachment. The Defendant, however, must still comply with Tennessee Rule of Evidence 613(b) for the statement to be properly admitted for impeachment purposes. Rule 613(b) provides, in relevant part, that:

> Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless and until the witness is afforded an opportunity to explain

---

[12] Rule 803(26) provides an exception to the hearsay rule for a prior inconsistent statement of a testifying witness where "[a] statement otherwise admissible under Rule 613(b)" meets all of the following conditions:

(A) The declarant must testify at the trial or hearing and be subject to cross-examination concerning the statement.

(B) The statement must be an audio or video recorded statement, a written statement signed by the witness, or a statement given under oath.

(C) The judge must conduct a hearing outside the presence of the jury to determine by a preponderance of the evidence that the prior statement was made under circumstances indicating trustworthiness.

Tenn. R. Evid. 803(26).

[13] Moreover, Rule 803(26)(B) requires that the prior inconsistent statement be a recorded statement, a statement signed by the witness, or a statement given under oath. The alleged statement by Morris in this case was simply an oral statement. Furthermore, the Defendant never requested the hearing outside the presence of the jury required by Rule 803(26)(C). Finally, the Defendant failed to comply with the initial prerequisite of compliance with Rule 613(b) as set forth in more detail above.

or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require.

Tenn. R. Evid. 613(b).

Therefore, Rule 613(b) requires that a witness must be confronted with his or her prior inconsistent statement and "afforded an opportunity to explain or deny" the prior statement before extrinsic evidence of the statement may be admitted. Id.; Martin, 964 S.W.2d at 567 (holding that extrinsic evidence of a prior inconsistent statement "remains inadmissible until the witness either denies or equivocates as to having made the prior inconsistent statement"). In order to lay a proper foundation, the party seeking to admit the prior inconsistent statement must: "(1) provide the witness an opportunity to admit, deny, or explain the prior inconsistent statement; (2) refresh the witness' memory; and (3) allow the witness to respond intelligently to the impeachment attempt." Martin, 964 S.W.2d at 567 (citations omitted); see also Neil P. Cohen, Sarah Y. Sheppeard & Donald F. Paine, TENNESSEE LAW OF EVIDENCE § 6.13[5] (5th ed. 2005). Thus, "[t]he admissibility of the extrinsic evidence is contingent upon whether the witness admits or denies having made the prior inconsistent statement." Martin, 964 S.W.2d at 567; see also State v. Flood, 219 S.W.3d 307, 315 (Tenn. 2007).

In this case, Morris never was presented with her allegedly inconsistent statement, a fact which defense counsel conceded at oral argument. Consequently, the proper foundation had not been laid for the admission of Morris's prior inconsistent statement through extrinsic evidence. The evidence, therefore, was inadmissible for impeachment purposes, and the trial court properly excluded Forrest's testimony on the basis that it was hearsay.[14] Accordingly, we conclude that the trial court did not abuse its discretion by disallowing Forrest's testimony regarding Morris's prior statement.

### 2. Admissibility of Testimony Regarding Second Two-Liter Bottle

For her second issue, the Defendant asserts that the trial court erred by allowing testimony regarding a second two-liter bottle allegedly found in the Robertsons' driveway "when the [S]tate's proof was that only one bottle had exploded in the truck cab." In this regard, we note that the Defendant's appellate brief is devoid of any legal argument or citation to legal authority on this issue, and we cannot discern the basis of the Defendant's assignment of error. Consequently, the issue has been waived. Tenn. R. App. P. 27(a)(7).

---

[14] To the extent that the trial court's exclusion of the evidence solely on the ground that it was hearsay could be construed to be error, clearly any such error would be harmless error.

Moreover, after reviewing the trial transcript, we find no objection on the record by defense counsel to the introduction of testimony related to the existence of a second two-liter bottle. Rather, defense counsel repeatedly elicited testimony from witnesses, both on direct and cross-examination, regarding a second bottle. The Defendant now insinuates on appeal that the presence of a second two-liter bottle on the Robertsons' land somehow implicates them in operating a "safe haven for meth cooking" and attempting to cover it up. It goes without saying that the Defendant cannot adduce testimony from a witness, fail to object, argue that the evidence so adduced proves her innocence, and then, for the first time on appeal, argue that the evidence is inadmissible. See Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). We conclude that the Defendant's second issue is devoid of merit.

### 3. *Failure to Dismiss Tampering with Evidence Charge / Election of Offenses*

For the Defendant's third issue, she argues that the trial court erred by not dismissing the second count, tampering with evidence, at the close of the State's proof. Although the Defendant's precise argument on these issues is somewhat confusing, after reviewing the record, we must conclude that the Defendant is not entitled to relief on this issue.

We note initially that defense counsel did not specifically move the trial court to dismiss the second count. Rather, defense counsel orally moved to dismiss the first and third counts (i.e., criminal attempt to commit aggravated child endangerment and accessory after the fact), and moved that the State be required to elect between the first and second counts (i.e., criminal attempt to commit aggravated child endangerment and tampering with evidence). It appears that, in addition to denying the motion for election of offenses, the trial court also treated the motion to dismiss as applying to all three counts, and denied the motion on these grounds. To this extent, the Defendant's motion to dismiss on the second count was not properly made at trial. We, nevertheless, have chosen to review the trial court's decision on its merits.

Preliminarily, however, we will address the Defendant's election of offenses argument. While not specifically raised as an issue, the Defendant's appellate brief argues that the trial court erroneously failed to require the State to elect between the second and third counts (i.e., tampering with evidence and accessory after the fact).[15] The Defendant argues that she made such a motion at the close of the State's proof and again at the close of

_____

[15] We caution that the arguments presented by an appellant should correspond to the issues presented for review. See Tenn. R. App. P. 27(a)(7) (stating that an appellant's brief shall contain "[a]n argument . . . setting forth the contentions of the appellant *with respect to the issues presented* ") (emphasis added).

all the proof. Here again, our review of the trial transcript reveals that defense counsel, in fact, moved for an election between the first and second counts (i.e., criminal attempt to commit aggravated child endangerment and tampering with evidence). Thus, the Defendant has raised an issue on appeal that was not properly preserved at trial, nor in a motion for new trial. Moreover, the Defendant's brief cites no legal authority for this argument. Thus, while the Defendant technically has waived this argument, we hold that any such argument is without merit. The elements of the offense of tampering with evidence clearly are different from the elements of the offense of accessory after the fact. Compare 7 Tenn. Pattern Jury Instr. T.P.I. Crim. 26.03 (13th ed.) with 7 Tenn. Pattern Jury Instr. T.P.I. Crim. 3.03 (13th ed.). The issue here, if any, was one of merger. The trial court, in fact, merged the second and third counts after the trial. Accordingly, the Defendant is entitled to no relief on this issue.

With regard to the motion to dismiss, the trial court discerned the Defendant as having moved to dismiss all three counts, including the tampering with evidence count. We interpret the trial court's ruling as one denying a motion for judgment of acquittal. The Defendant elected to present evidence after the trial court denied the motion, thus waiving appellate review as a motion for judgment of acquittal. See State v. Justin Brian Conrad, No. M2008-01342-CCA-R3-CD, 2009 WL 3103776, at *6 (Tenn. Crim. App. Sept. 29, 2009); State v. Thomas Edward Clardy, No. M2007-02729-CCA-R3-CD, 2009 WL 230245, at *11 (Tenn. Crim. App. Feb. 2, 2009). We, however, will review whether sufficient evidence was presented to support the Defendant's conviction for tampering with evidence. In doing so, we will consider both the evidence presented by the State as well as the evidence presented by the Defendant. See Clardy, 2009 WL 230245, at *11.

Our standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); see also Tenn. R. App. P. 13(e). After a jury finds a defendant guilty, the presumption of innocence is replaced with a presumption of guilt. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Consequently, the defendant has the burden on appeal of demonstrating that the evidence was insufficient to support the jury's verdict. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellate court does not weigh the evidence anew; rather, "a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts" in the testimony and all reasonably drawn inferences in favor of the State. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992) (citations omitted). Thus, "the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom." Id. at 75 (citation omitted). This standard of review applies to guilty verdicts based upon direct or circumstantial evidence. State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (citing State

v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). In <u>Dorantes</u>, our Supreme Court adopted the United States Supreme Court standard that "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." <u>Id.</u> at 381 (citations omitted). Accordingly, the evidence need not exclude every other reasonable hypothesis except that of the defendant's guilt, provided the defendant's guilt is established beyond a reasonable doubt. <u>Id.</u>

In the present case, the Defendant was convicted of tampering with evidence.[16] Tennessee's criminal code provides that it is a Class C felony for "any person, knowing that an investigation or official proceeding is pending or in progress, to [a]lter, destroy, or conceal any record, document or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding." Tenn. Code Ann. § 39-16-503(a)(1)-(b) (2006). The elements of a tampering with evidence offense include: "(1) an ongoing investigation about which the accused knows, (2) the accused alters, destroys, or conceals some 'record, document or thing,' and (3) the accused tampers with the 'record, document or thing' in order to impair its use as evidence in the investigation." <u>State v. Majors</u>, 318 S.W.3d 850, 858 (Tenn. 2010).

When viewed in the light most favorable to the State, the evidence sufficiently establishes that the Defendant tampered with evidence in contravention of Tennessee Code Annotated section 39-16-503(a)(1). Despite her protestations to the contrary, the evidence shows that the Defendant knew that a police investigation into the presence of a methamphetamine lab was ongoing at the scene of the explosion. While the Defendant testified that she thought her son had been in a car wreck, she admitted that when she first arrived on the scene, Mrs. Robertson told her that a methamphetamine lab had exploded. Mr. and Mrs. Robertson both testified that they saw the Defendant take a black duffle bag containing materials used to manufacture methamphetamine from the back of her son's pickup truck and relocate the bag to her own vehicle before police arrived.

The Defendant admitted that after police arrived, she was aware that a police investigation was ongoing. The investigation took several hours and, during that time, police officers attempted to keep the potential witnesses separated and secure. The Defendant testified that she asked police multiple times whether she was allowed to use the restroom, and that, finally, she was allowed to do so. Mrs. Robertson testified that during the Defendant's "restroom break," the Defendant instructed Morris to take the duffle bag out of

---

[16] As noted above, the jury also convicted the Defendant of accessory after the fact, Tenn. Code Ann. § 39-11-411(a)(2); however, the trial court merged this conviction with the conviction for tampering with evidence.

the trunk of the Defendant's car and to hide it. Mrs. Robertson then witnessed Morris do as she was instructed.

Morris's testimony corroborated the testimony of Mr. and Mrs. Robertson. She testified that the Defendant instructed her to move the duffle bag from the Defendant's car because Sergeant Megs had asked if he could search the car. When Morris was discovered hiding the bag in the woods behind the Robertsons' house, Mrs. Robertson protested the bag being placed on her property, at which point, according to Morris, the Defendant told her to place the bag inside Forrest's Jeep. These facts are sufficient to permit a jury to conclude that the Defendant concealed the black duffle bag in order to impair its availability as evidence in an investigation into her son's methamphetamine lab.

Much of the evidence in this case came from eyewitness testimony. The weight and credibility given to the testimony of witnesses, and the reconciliation of conflicts in that testimony, are questions of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984). Thus, the credibility of an eyewitness identifying the accused as the perpetrator of the crime for which she stands trial is a matter entrusted to the trier of fact and not this Court. State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). In this case, the jury obviously accredited the testimony of certain witnesses over other witnesses. It is not the role of this Court to reevaluate the evidence or substitute its own inferences for those drawn by the jury. State v. Winters, 137 S.W.3d 641, 655 (Tenn. Crim. App. 2003) (citations omitted). Consequently, we hold that the evidence was sufficient to support the Defendant's conviction for tampering with evidence.

## 4. Sentencing and Appeal Bond

For her last two issues, the Defendant asserts error with both the sentence and appeal bond ordered by the trial court. However, only a partial transcript of the sentencing hearing containing only the testimony of Forrest is included in the appellate record. The truncated transcript provided by the Defendant makes no mention at all of an appeal bond. The transcript is clearly insufficient for this Court to conduct a meaningful review of the trial court's sentencing decision.

It is the appellant's duty to provide a record which conveys "a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b)-(c). "Where the record is incomplete and does not contain a transcript of the proceedings relevant to an issue presented for review, or portions of the record upon which the party relies, an appellate court is precluded from considering the issue." State v. Ballard, 855 S.W.2d 557, 560-61 (Tenn. 1993). In such cases, we must presume that the trial court ruled correctly. State v. Ivy, 868 S.W.2d 724, 728 (Tenn. Crim.

App. 1993). The sparse record provided by the Defendant on her sentencing and appeal bond issues does not provide this Court with an appropriate foundation for review. Consequently, as conceded by defense counsel at oral argument, the Defendant has waived her final two issues.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court in all respects.

_____

JEFFREY S. BIVINS, JUDGE