IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 19, 2012 Session

**STATE OF TENNESSEE v. NEIL VADER**

**Direct Appeal from the Criminal Court for Marshall County**
**No. 2011-CR-58     Robert Crigler, Judge**

_____

**No. M2011-02394-CCA-R3-CD - Filed March 28, 2013**

_____

Following a jury trial, Defendant, Neil Vader, was convicted of driving in violation of a motor vehicle habitual offender (MVHO) order, driving under the influence of an intoxicant (DUI), violation of the implied consent law, and driving on a revoked driver's license. Defendant waived a jury trial to determine the number of his prior DUI convictions. The trial court found that Defendant had three prior DUI convictions and was guilty of DUI fourth offense. The trial court sentenced Defendant to serve one year and nine months for counts one and two and eleven months and twenty nine days for count three. All of Defendant's sentences were ordered to run consecutively. The trial court merged count four, driving on a revoked driver's license, with violation of a MVHO order. On appeal, Defendant raises the following issues: (1) the trial court erred in excluding testimony offered as extrinsic evidence of a prior inconsistent statement to impeach a witness; (2) the prosecuting attorney engaged in misconduct during closing arguments; and (3) the cumulative effect of the trial court's evidentiary error and prosecutorial misconduct constitutes reversible error. After thorough review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right: Judgments of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M TIPTON, P.J. and JOHN EVERETT WILLIAMS, J., joined.

Robert Dalton, Lewisburg, Tennessee, for the appellant, Neil Vader.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; Charles Frank Crawford, District Attorney General; and Chris Collins, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## I. Factual Background

Although Defendant does not challenge the sufficiency of the convicting evidence, a summary of the facts underlying Defendant's convictions is necessary to resolve the issues on appeal.

On February 26, 2011, Marshall County Deputy Tony Nichols and Reserve Deputy Jeff McPherson were on patrol in the Belfast area of Marshall County, with Deputy Nichols driving. At approximately 8:45 p.m. that evening, Deputy Nichols saw a white Dodge Ram pickup truck parked facing north along the side of Belfast Farmington Road. The officer pulled alongside the truck with his patrol car facing south. Deputy Nichols testified the patrol car was about five feet from the truck while Reserve Deputy McPherson testified that the vehicles were "door to door." Deputy Nichols observed an individual sitting in the driver's seat and another person standing between the truck and a chain link fence. The passenger door was ajar and the vehicle's interior light was on due to the passenger door being open. The area was also illuminated by a streetlight. At trial, Deputy Nichols identified the individual sitting in the driver's seat as Defendant. Reserve Deputy McPherson testified he saw Defendant in the driver's seat of the pickup as well. Both Deputy Nichols and Reserve Deputy McPherson testified they overheard the driver call to the other individual to get into the truck. Neither officer saw a third person in or around the vehicle. Deputy Nichols drove past the truck as it began to accelerate. He turned around in a nearby parking lot and followed the vehicle as it drove north.

Both officers saw two heads in the truck as the patrol car's headlights shone in the window during pursuit. Deputy Nichols initiated a traffic stop of the truck after observing the vehicle cross the center yellow line of the road. Thereafter, the truck turned into a residential driveway. Deputy Nichols followed the truck into the driveway with a spotlight directed towards the truck's rear window. Deputy Nichols then parked the patrol car facing the truck with both the patrol car's headlights and the spotlight shining on the truck after it stopped at the end of the driveway. Deputy Nichols testified a security light illuminated the driveway. Both Deputy Nichols and Reserve Deputy McPherson testified that when the truck stopped, the driver's side door did not open and no one exited the driver's side of the vehicle. Both officers testified that the passenger door of the truck opened and that the passenger, later identified as Robert "Billy" Landes, got out of the vehicle. Deputy Nichols told Reserve Deputy McPherson to watch Landes. As Reserve Deputy McPherson approached the truck on foot to watch Landes, he observed Defendant lying across the seat of the truck crawling toward the passenger door. Deputy Nichols walked to the truck and observed Defendant lying across the front seat of the truck crawling toward the passenger door as well. The

officer helped Defendant exit the truck. Deputy Nichols testified he smelled the odor of alcohol on Defendant's breath while doing so.

Deputy Nichols and Reserve Deputy McPherson both testified that Defendant was unsteady on his feet and had trouble standing and walking. Deputy Nichols testified that Defendant spoke with slurred speech, that his eyes appeared glassy and bloodshot, and that he suspected Defendant was intoxicated. When asked to produce a driver's license, Defendant told the officer it was revoked, and he provided the officer a state identification card instead. When Deputy Nichols asked Defendant to perform field sobriety tests, Defendant refused. Deputy Nichols arrested Defendant and placed him into the patrol car where he read a "Tennessee Implied Consent Advisement" form to Defendant. Defendant indicated that he refused to submit to the field sobriety tests and signed the form.

Shortly afterward, Deputy Nichols arrested Landes for public intoxication. At this time, Landes told Deputy Nichols that George King, not Defendant, had been driving the truck. No further investigation or search to locate King was performed at the scene by the officers. On the way to jail, Deputy Nichols told Reserve Deputy McPherson that Landes told him King had been driving the truck. At trial, Deputy Nichols testified he did not see King on the evening of February 26. Reserve Deputy McPherson testified he never saw more than two people in or around the truck at any time during the entire encounter.

During Defendant's proof, Landes testified that he, Defendant, and King were in the truck at the time of the stop. He further testified that George King had been driving the truck at the time of the traffic stop. Landes explained that all three men were employed at Robeson Vinyl and had been drinking alcohol after work on February 26. Landes testified he believed King had exited the truck at the time of the stop and had been hiding underneath the vehicle while he and Defendant were arrested. Landes admitted he did not see King exit the truck.

During Defendant's presentation of evidence, George King testified that he recalled drinking alcoholic beverages with Defendant and Landes the evening of Defendant's arrest. However, King testified he was not with Defendant and Landes at the time of their arrests. During direct examination, King testified he never told anyone that he had driven the truck that night or that he had exited and hid underneath it after officers made the traffic stop. Also, King testified that his last day employed with Robeson Vinyl was on February 25 or February 26, 2011, and that he had resigned from this position to work for another company.

Over the State's objection, the trial court permitted Jimmy Stacey to testify about a phone conversation he had with King. Stacey, a fellow co-worker of Defendant, Landes, and King at Robeson Vinyl, testified that he telephoned King on February 27 after learning of Defendant's and Landes's arrests. Stacey testified that during this conversation, King told

him that he got out of the truck at the time of the stop and had hidden underneath it while Defendant and Landes were being placed into custody.

When Defendant called Bill Robeson to testify about a substantially similar telephone conversation he had with King, the trial court limited the scope of Robeson's testimony regarding the conversation to the termination of King's employment with Robeson Vinyl. During direct examination by Defendant's counsel, Robeson, the owner of Robeson Vinyl, testified as follows:

[DEFENSE COUNSEL]:    Now George King, he is a subcontractor for you?

[WITNESS]:    Was.

[DEFENSE COUNSEL]:    Was. Why is he no longer a subcontractor for you?

[WITNESS]:    Because I told him I didn't have any more work for him, because I didn't really care for somebody that doesn't take responsibility for what they do.

[DEFENSE COUNSEL]:    Did he quit?

[WITNESS]:    I told him that I didn't have any more work for him. He didn't argue much because I don't think he wanted to come to work where he was near Neil anyway.

[DEFENSE COUNSEL]:    Any idea why he wouldn't want to be near Neil?

[WITNESS]:    Well, because he is lying about stuff.

In an offer of proof outside of the jury's presence, Robeson testified he conversed with King by phone either one or two days after Defendant and Landes were arrested. Robeson testified that during this conversation King said that he (King) had been driving the truck at the time it was stopped by police on February 26. Robeson testified that King told him he had exited the driver's side door and hid underneath the truck while Defendant and Landes were arrested.

## II. Analysis

*Prior Inconsistent Statement*

The first issue we address is whether the trial court properly excluded extrinsic evidence of a prior inconsistent statement made by George King. The trial court ruled that Defendant had not laid the prerequisite foundation for its admission. Rule 613(b) of the Tennessee Rule of Evidence mandates:

> [e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposing party is afforded an opportunity to interrogate the witness thereon or the interests of justice otherwise require.

Tenn. R. Evid. 613(b). The proper procedure requires that a witness's attention be drawn to the place, the persons present, the time of the statement, and to the substance of the statement before extrinsic evidence of the prior inconsistent statement can be used to impeach the witness's credibility. *State v. Martin*, 964 S.W.2d 564, 567 (Tenn. 1998) (citing *Middle Tenn. R.R. Co. v. McMillan*, 134 Tenn. 490, 515-16, 184 S.W 20 (Tenn. 1916)); *State v. Wyrick,* 62 S.W.3d 751, 787-88 (Tenn. Crim. App. 2001); *see James v. State*, 506 S.W.2d 797, 800 (Tenn. Crim. App. 1973) (holding that in order to impeach a witness by proving that he made a statement out of court contrary to what he has testified to in court, the time, place, and persons to whom the declarations were made must be stated); *see also State v. Burton*, No. M2008-00431-CCA-R3-CD, 2009 WL 2382284 (Tenn. Crim. App., Nashville, Aug. 3, 2009), *perm. app. denied* (Tenn., Dec. 14, 2009).

At trial, after George King testified that he had not been driving the Dodge pickup truck on February 26, 2011, when it was stopped. Defense counsel questioned King as follows:

[DEFENSE COUNSEL]: Did you ever tell anybody else that you did go to Billy Landes' house that night?

[WITNESS]: No.

[DEFENSE COUNSEL]: No? Did you ever tell anybody else that you were driving that truck that night when they were stopped?

[WITNESS]: No.

| [DEFENSE COUNSEL]: | Did you ever tell anybody else that after you hid under the truck that you went and hid in a bush? |
|---|---|
| [WITNESS]: | No. |

Defense counsel merely asked King whether he ever told "anybody else" he had been driving the truck that evening and whether he had ever told "anybody else" that after he had hidden underneath the truck he hid in a bush. Defense counsel never asked King whether he had made a prior statement to Robeson, when or where the statement to Robeson was made, the substance of the statement, or if other persons were present when the statement was made. King was not provided an opportunity to admit, deny or explain any statement made specifically to Robeson. At most, the examination put King on notice to respond intelligently to defense counsel's questions. Yet, these questions lack specificity. It is not enough to ask a witness a general question, whether he has ever said "so and so," or whether he has always told the same story. *James*, 506 S.W.2d at 800; *accord Martin*, 964 S.W.2d at 567. A foundation is a prerequisite to the admission of extrinsic evidence under Tennessee Rule of Evidence 613(b). *Martin*, 964 S.W.2d at 566-68; *Wrick*, 62 S.W.3d at 787-88. No foundation by which King's testimony could have been impeached by Robeson on this point was laid during King's examination by defense counsel.

Rule 613(b) permits a trial court to depart from the foundational requirements when "the interests of justice otherwise require." Tenn. R. Evid. 613(b). This clause provides flexibility to deal with the *extraordinary case* in which strict application of these foundational requirements would lead to injustice. *Martin*, 964 S.W.2d at 568. The case presently before us is not such a case. Defendant had ample opportunity to lay a foundation before he attempted to introduce Robeson's testimony as extrinsic evidence of prior inconsistent statements for impeachment purposes. The trial court admitted substantially similar testimony from Jimmy Stacey over the State's objection and the trial court later indicated it may have erred by doing so. The trial court properly excluded this portion of Bill Robeson's testimony. *Id*.; *Wyrick*, 62 S.W.3d at 788 (defendant not entitled to present extrinsic evidence of prior inconsistent statements when defendant fails to comply with the requirements of Rule 613); *see also James*, 506 S.W.2d at 801 (holding absent a proper foundation for impeachment, it is not error to exclude evidence of inconsistent statements made by the witness). Accordingly, Defendant is not entitled to relief on this issue.

### B. Prosecutorial Misconduct

Defendant asserts that the State's prosecutor committed prosecutorial misconduct during closing argument in two ways: (1) by intentionally misstating the evidence; and (2)

by stating personal opinions of the justness of the prosecution, the credibility of witnesses, and the guilt of Defendant. We will address each assertion of prosecutorial misconduct individually.

### *1. Misstatement of Evidence*

Defendant cites two separate statements by the prosecutor, which occurred five pages apart in the transcript of the trial proceedings:

> [PROSECUTOR]: You saw Mr. Robeson, who got his information from what his employees were telling him.
>
> * * *
>
> But Mr. Robeson is getting his information secondhand.

Defense counsel made no objection to the first statement and only said "objection" immediately following the second statement. Defense counsel never stated the basis for objection. The trial court did not specifically sustain the objection or overrule the objection, but immediately gave the following instruction to the jury:

> [COURT]: Well, let me say this. I think I have said this before. Words and statements of counsel are not evidence. They are not the law. If any statements are made that you think are inconsistent with that, you should disregard them.

Not only did Defendant's counsel not state the basis of the objection, he did not ask for any further relief from the trial court and the State's argument proceeded to its conclusion with no further objections from Defendant's counsel.

As noted above, Defendant did not object to the first statement. Absent a timely objection, this issue is thus waived for plenary review on appeal. *See* Tenn. R. App. P. 36(a); *State v. Armstrong,* 256 S.W.3d 243, 248-49 (Tenn. Crim. App. 2008); *State v. Scarborough*, 300 S.W.3d 717, 730-31 (Tenn. Crim. App. 2009); *State v. Sammons*, 656 S.W.2d 862, 871 (Tenn. Crim. App. 1982). Even if a timely objection had been erroneously overruled it would have been harmless error. As to the second statement, to which Defendant made an "objection" without stating the basis of the objection, we conclude that such a blanket objection is essentially no different than no objection being made. Perhaps the basis of the objection was clear to the trial court for reasons that are not apparent from the print of the transcript. But a reviewing court has no way to guess as to what was the basis of the

objection. Like the first statement, even if the statement was improper, the trial court *sua sponte* gave a prompt instruction to the jury. Defendant made no objection to this instruction and did not ask for any further relief. Any error was harmless.

### *2. Expression of Personal Opinion by the Prosecutor*

Defendant argues on appeal that the State prosecutor committed prosecutorial misconduct by making the following comments during his arguments to the jury:

> I had to do my investigation because *I don't bring a case to a jury if I don't believe it.* You can't effectively argue it. And it's not right because a prosecutor's job is not to bring forth a guilty verdict. It is to protect the innocent, along with the convicted—the accused, or the people who you know did something wrong. *I don't have a doubt.* The reason I don't have a doubt is because I have two officers, one of them with 13 years' experience, who pulls up on a car, gets within five feet of them, and says, you know what, that guy was driving that vehicle. (emphasis added).

> * * *

> The testimony before you today of two officers is that there is no way, no how, that anybody else was in that vehicle. *I can guarantee you something as a prosecutor. If I thought there was, we wouldn't be here today. I promise you.* But *my heart rests easy*, and *my mind rests easy to a moral certainty* that there were two people in that vehicle when they were pulled over at the Bellfast Lions Club, two people, not three. (emphasis added).

> * * *

> *I hope your minds are settled at ease, as is mine*, that [Defendant] was behind the wheel that night, except when he was crawling out head first to get out. (emphasis added).

> * * *

> It is beyond a reasonable doubt on each of the four counts. Because *it is beyond a reasonable doubt and because, trust me, if I didn't believe this, and I didn't know this is what happened, I wouldn't present it to you.* Wouldn't do it. (emphasis added).

Defendant did not object to any of the above statements during closing arguments. The State argues the issue is thus waived. *See* Tenn. R. App. P. 36(a); *State v. Robinson*, 146 S.W.3d 469, 518-19 (Tenn. 2004) (holding waiver applies when defendant fails to contemporaneously object to prosecutor's closing arguments when made). In his reply brief, Defendant argues, without citation to legal authority, that the issue is not waived on the basis that he did make one objection during the State's closing argument. Defendant predicates this argument on the same "objection" previously mentioned in this opinion. Again, we point out that the legal basis of that "objection" was not stated or articulated, and thus, for practical purposes, was the same as making no objection at all. Arguing how this one "objection" prevents the issue from being waived, Defendant states in his brief:

> The State further theorizes that [Defendant] has waived his right to appellate review of the prosecutor's misconduct due to failure to lodge a proper objection to the prosecutorial misconduct during closing arguments. State's Brief 16. The State makes this assertion in spite of that fact that the State also (and correctly) acknowledges that the [Defendant] did register a proper objection to the prosecutorial misconduct that occurred during closing arguments. *Id*. While it is not clear how the State intends to maintain both contradictory assertions simultaneously, the State appears to be claiming that defense counsel was required to make serial objections to each and every instance in order to avoid waiver of the issue on appeal. In actual fact, of course, defense counsel, having been overruled on this specific objection, is not required to lodge the same objection repeatedly, over and over, to avoid waiver. To do so would constitute serial objections, which are not only expressly forbidden but would also force defense counsel to choose between waiver of the issue and the strong likelihood of being held in contempt by the trial court.

In addition to not citing any legal authority in support of his argument, Defendant's argument is misplaced. There is absolutely nothing in the record that shows any issue arose as to "serial objections." Furthermore, the purported "objection" made by Defendant is contained on page 223 of the trial transcript. Two of the statements complained of occurred before Defendant's "objection" and are respectively contained on pages 219 and 221 of the transcript. Therefore, the later so-called "objection" made by defense counsel could not be construed to apply to earlier, non-objected to, comments by the prosecutor. That being said, Defendant also requests that this court review the issue on the basis of plain error.

This court may consider plain error "[w]hen necessary to do substantial justice." Tenn. R. App. P 36(b). However, before such an error is recognized, it "must be 'plain' and it must affect a 'substantial right' of the accused." *State v. Adkisson*, 899 S.W.2d 626, 639

(Tenn. Crim. App. 1994). To determine whether plain error exists, five inquiries must be made and answered affirmatively. We must ask: (1) whether the record clearly establishes what occurred in the trial court; (2) whether a clear and unequivocal rule of law has been breached; (3) whether a substantial right of the accused has been adversely affected; (4) whether an accused has waived the issue for tactical reasons; and (5) whether consideration of the error is necessary to do substantial justice. *E.g.*, *State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000) (adopting the five-factor test announced in *Adkisson*, 889 S.W.2d at 641-42). Moreover, the error must be especially egregious in that it strikes at "the fairness, integrity or public reputation of judicial proceedings" and is "of such a great magnitude that it probably changed the outcome of the trial." *Adkisson*, 899 S.W.2d at 639, 642.

This court has previously recognized that within closing arguments "[i]t is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant." *State v. Goltz*, 111 S.W.3d 1, 6 (Tenn. Crim. App. 2003); *State v. Thornton*, 10 S.W.3d 229, 235 (Tenn. Crim. App. 1999); *Lackey v. State*, 578 S.W.2d 101, 107 (Tenn. Crim. App. 1978). Clearly and unequivocally, the prosecutor made improper argument in violation of the holding in *Goltz*. He commented that: (1) he does not bring a case unless he believes it; (2) he does not have a doubt of Defendant's guilt; (3) he guarantees and promises that if he thought there had been a third person in the truck "we wouldn't be here today" and; (4) the jury should trust him, that if he did not believe Defendant was guilty of all four counts, he would not present the case to the jury.

Examining the five *Adkisson* factors, we conclude that the record clearly establishes what occurred in the trial court and that a clear and unequivocal rule of law was breached. However, the other three *Adkisson* factors are not established. Due to the relative strength of the State's case, the prosecutor's comments about his belief in Defendant's guilt did not adversely affect Defendant's right to a fair trial. Thus, consideration of the waived issue under the "plain error" doctrine is not necessary to do substantial justice. It also appears Defendant may have waived objecting to the argument for tactical reasons. Defendant did attempt, although meagerly, to place one objection during the State's closing argument, but Defendant's counsel, during his closing argument, stated:

> [n]ow, I knew at the start of this case - that's sort of cheating on my part - *but I knew at the start of this case that George King was under that truck that night*. Now you all know that George King was under that truck. *I knew at the start of this case that Tony Nichols had made a mistake that night*. He had arrested the wrong man. Now, after all of this evidence, you folks know that, too. (emphasis added)

Finally, consideration of the error under plain error review is not necessary to do substantial justice in this case.  However, we direct attention of both counsel to the following:

> **Rule 3.4.  Fairness to Opposing Party and Counsel.** – A lawyer *shall not*:
>
> * * *
>
> (e)    in trial,
>
> * * *
>
> >    (2)    assert personal knowledge of facts in issue except when testifying as a witness; or
> >
> >    (3)    state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused;

Rule of the Supreme Court of the State of Tennessee 8, RPC 3.4 (italicized emphasis added).

Defendant is not entitled to relief on this issue.

### C. Cumulative Effect

Finally, Defendant asserts that the cumulative effects of an evidentiary error coupled with alleged prosecutorial misconduct during closing arguments deprived him of his right to a fair trial.  For the reasons set forth above, we cannot agree.  Defendant is correct that the cumulative effect of error during trial may operate to deny a defendant of a meaningful, fair trial.  *State v. Hester*, 324 S.W.3d 1, 76-77 (Tenn. 2010) (holding that, in the aggregate, multiple harmless errors committed in trial proceedings may have a cumulative effect on the proceedings so great as to require reversal to preserve a defendant's right to fair trial).  However, as discussed above, the trial court committed no error on the evidentiary issue and the other issues were waived and not subject to plain error review.  Thus, there can be no cumulative effect that deprived the Defendant of a fair, impartial, and meaningful trial.

**CONCLUSION**

Having addressed the issues presented by Defendant, we affirm the judgments of the trial court.

_____
THOMAS T. WOODALL, JUDGE